Harold BROWN, dba Well Servicing
Equipment & Supply,
Appellant (Plaintiff),

v.

David GREEN and Leon Green, dba
Green Drilling, and Keck Drilling, Inc.,
and Jim's Water Service, Inc., Appellees
(Defendants).

No. 5281.

Supreme Court of Wyoming.

Oct. 21, 1980.

Donn J. McCall, Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellant.

Cameron S. Walker (argued), Schwartz, Bon & McCrary, Casper, for appellee Keck Drilling, Inc.; Stanley S. Sheehan, Sheehan, Stevens & Sansonetti, Gillette, for appellee Green Drilling; and William Omohundro, Omohundro & O'Brien, Buffalo, for appellee Jim's Water Service, Inc.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

This appeal is from a summary judgment entered February 5, 1980 ordering the dismissal of appellant's complaint in replevin which had alleged the conversion of an Ideco rotary table by appellees. Appellant states the issue on appeal is whether the trial court correctly determined that the security agreement between appellee–Keck Drilling, Inc. (Keck) and a third party established a security interest in the particular rotary table in question as after–acquired property. The appellees state the issue to be whether appellant had any interest in the property which he could assert. We will hold appellant had no interest in the property and affirm.

Jerry McCutchin, Jr., though not a party to the suit, is the focal figure in the development of the dispute. As a general part-

ner in Mustang Drilling, Ltd., a Texas limited partnership, he entered into a contract with Keck for the purchase by Mustang of "one U–15 Drawworks and related equipment," which language describes a drilling rig. The purchase price was set at $551,000; $51,000 was paid as a downpayment and a promissory note was given for the balance.

On August 25, 1978, in order to secure payment of the promissory note, a security agreement was executed which granted Keck a security interest in:

" * * * the equipment described in the schedule attached as Exhibit 'A' hereto * * * and any and all accessions and additions thereto to secure the indebtedness arising under the Note."[1] (Emphasis added.)

Keck perfected its security interest by filing a financing statement with the Wyoming Secretary of State on September 5, 1978 in accordance with §§ 34–21–950 and 34–21–951, W.S.1977, 1980 Cum.Supp.[2] In September, 1978, the rig was moved to a well location in Campbell County.

On or about October 3, 1978, McCutchin agreed to purchase the Ideco rotary table, which is the subject of this suit from appellant for a price of $27,904.30. The transaction was to be a cash sale, and it was understood that a check was to be tendered upon delivery. At no time during the negotiations did McCutchin disclose his relationship with Mustang.

When the rotary table was delivered to Gillette, in accord with the agreement, McCutchin informed appellant's agent that he did not have the check for the purchase price with him but that he would forward it in a few days. Appellant's agent was agreeable to this and left the rotary table with McCutchin. The check was never received despite numerous demands for payment. No attempt was made by appellant to perfect a security interest in the rotary table.

After receipt of the rotary table, Mustang mounted it, by welding, on the U–15 drilling rig. The drilling rig, as modified, was then used to drill three wells. When around the first of November, 1978, Mustang experienced financial difficulties, the rig was transported to and stored at the Getter Trucking Yard in Gillette.

In December of 1978, Mustang went into default on its security agreement with Keck. Keck repossessed the rig with all attachments, including the rotary table, and, to foreclose its security interest, scheduled a sale for March 23, 1979.

On March 20, 1979, Mustang signed an agreement and authorization whereby it specifically "ratifies and confirms such private sale and gives authority to KECK DRILLING CORPORATION to convey full title to any purchaser at such foreclosure sale." The agreement recognized that the sale included "a certain unit 15 drilling rig together with appurtenant and accessory equipment."

On March 23, 1979, the highest bid received was $500,000.00. Keck rejected it as too low. Appellant appeared at the sale and claimed ownership of the rotary table. Keck refused to relinquish possession.

Appellant claims to have obtained, on May 31, 1979, a default judgment against McCutchin. In the judgment the court found that the appellant had canceled the sale of the rotary table and, accordingly, awarded appellant possession of it or, in the alternative, judgment for a monetary amount if possession of the rotary table could not be obtained. The appellant in the caption of the case before us on appeal is shown as Harold Brown, d/b/a Well Servicing Equipment and Supply.[3] The judgment

---

1. Exhibit A described the drilling rig and various attachments, including specific mention of a rotary table.

2. Sections 9 401 and 9 402, U.C.C. Once again we plead on behalf of the bench, bar and users of the U.C.C. for a statutory revision to restore the U.C.C. numbering system to the statutory sections.

3. This case, in the district court, was originally initiated on June 26, 1979 in the name of Well Servicing, Inc., d/b/a Well Servicing Equipment and Supply, plaintiff. In early January, 1980, the plaintiff moved for substitution, Rule

referred to was obtained in the name of Well Servicing, Inc., d/b/a Well Servicing Equipment and Supply. This makes no difference as far as this case is concerned, except that in the absence of some assignment from Well Servicing, Inc. to the appellant, the judgment on its face would supply no interest whatsoever on the part of the appellant with respect to the subject matter of that action. It would be a nullity as to the appellees here in that they were not parties to that action, even if it had been brought in the name of appellant as shown in this case. The facts disclosed here would, at the most, support only a money judgment for the seller of the rotary table against McCutchin for its price, with the right of execution. We know of no judgment lien on personal property.

On June 1, 1979, at a private foreclosure sale, Keck sold the U–15 drilling rig, including the rotary table, to the appellee Green Drilling (Green) for $750,000.00. Proceeds of the sale were prorated among various secured creditors, leaving Keck with a deficiency of $250,000.00. Mustang had executed a ratification agreement and authorization on May 29, 1979, in advance ratifying and confirming this sale. On June 12, 1979, appellee Green sold the rig to appellee Jim's Water Service. Included in these sales was the rotary table in question.

On June 26, 1979 appellant commenced this action against Keck, Green and Jim's Water Service. After completion of discovery, appellees filed separate motions for summary judgment. On November 20, 1979 appellant responded with a cross motion for summary judgment. The motions were argued before the district court on January 7, 1980. The court entered a summary judgment in favor of appellees on February 5, 1980. The court explained its ruling by noting that the rotary table was sold, without any type of encumbrance to

Mustang by appellant; and further, that because of the security agreement between Mustang and Keck, once the rotary table was attached to the drilling rig, Mustang, who had title to the rotary table, gave Keck a security interest in it.

Appellant wisely does not challenge the district court's finding that he had sold the rotary table to McCutchin without retaining any kind of an encumbrance. This conclusion is dictated by § 34–21–246(a)(ii), W.S. 1977[4] and § 34–21–913, W.S.1977.[5]

First, § 34–21–246(a)(ii), W.S.1977 provides:

"(ii) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. * * *"

Thus, at the time of delivery of the rotary table to Mustang, title passed and was vested in Mustang.

Section 34–21–913, states:

"(a) A security interest arising solely under the article on sales (article 2) is subject to the provisions of this article except that to the extent that and *so long as the debtor does not have or does not lawfully obtain possession of the goods:*

"(i) No security agreement is necessary to make the security interest enforceable; and

"(ii) No filing is required to perfect the security interest; and

"(iii) The rights of the secured party on default by the debtor are governed by the article on sales (article 2)." (Emphasis added.)

Under this, in order for appellant to have perfected a security interest, he must have

---

17, W.R.C.P., to show Harold Brown, d/b/a Well Servicing Equipment and Supply, plaintiff, on the ground that while Brown was sole shareholder in Well Servicing, Inc., he operated Well Servicing Equipment and Supply as a sole proprietorship. An order authorizing substitution was entered on January 7, 1980.

4. Section 2–401, U.C.C.

5. Section 9–113, U.C.C.

complied with the provisions of Article 9, U.C.C. But under § 34–21–922(a), W.S. 1977: [6]

"(a) Subject to the provisions of section 4–208 [§ 34–21–427] on the security interest of a collecting bank and *section 9–113 [§ 34–21–913]* on a security interest arising under the article on sales [§§ 34–21–201 to 34–21–299.5], *a security interest is not enforceable against the debtor or third parties unless*:

"(i) The collateral is in the possession of the secured party; or

"(ii) The debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral the word 'proceeds' is sufficient without further description to cover proceeds of any character." (Emphasis added.)

Thus, appellant at best had the rights of a general creditor since he had neither possession nor a signed security agreement.

On the other hand, appellee Keck did have a perfected security interest under the code. There was a signed security agreement as required by § 34–21–922(a), supra, which described the drilling rig as collateral and included "any and all accessions and additions thereto."

In response to appellant's contention that the accessions clause contained an insufficient description to include the rotary table which is the subject of this suit, we would note § 34–21–910, W.S.1977: [7]

"For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

We hold that the description in the security agreement did in fact reasonably identify the rotary table as collateral. This conclusion is reached because a rotary table must be, and the one sold to Mustang by appellant was, welded into place on the drilling rig covered by the security agreement. It is an attachment in the true sense of the word. Thus, this rotary table, as part of a drilling rig, was included in the description of after–acquired property which would specifically include all accessions and additions. Apparently the rotary table which came with the rig sold by Keck to Mustang was not suitable for the operations undertaken by Mustang.

Our liberality in construing the description of the collateral is in accord with the intention of the drafters of the U.C.C.,[8] as well as the decisions in other jurisdictions. As one authority has stated:

"Most of the courts interpreting 9–203(1)(b) have been comparatively generous to the secured creditor. For example, one court found that a description of the collateral as 'passenger and commercial automobiles' was satisfactory; another found that 'all inventory used in the production of boats' was adequate. Of course if we are to carry out the draftsmen's intention and permit the secured creditor to claim a perfected security interest in after acquired property, comparatively general descriptions of the collateral must suffice for it would be impossible in most such cases for the secured creditor to describe the collateral with any greater precision at the beginning of the agreement. It will always be possible for a court to find that the collateral in question is not covered by the description given and is not therefore part of the agreed collateral. In our judgment, a minority of courts have been unduly illiberal and have required more 'description' than 9–203 and 9–110 contemplate. For a discussion of analogous questions under 9–402, see Section 23–16." (Footnotes omitted.) White & Summers, U.C.C., § 23–3 at 789.

Appellant having only the rights of a general creditor and having no title or se-

**6.** Section 9–203(1), U.C.C. prior to 1972 amendment of the U.C.C.

**7.** Section 9–110, U.C.C.

**8.** See Official Comment, § 9-110, U.C.C.

curity interest of any sort in the rotary table, has no claim under an old but still sound doctrine that:

> " * * * [t]he plaintiff in an action of replevin must recover, if at all, upon the strength of his own title, and not upon the weakness of that of the defendant: Hilliard on Remedies for Torts, p. 30, sec. 6." *Dayton v. Wyoming National Bank*, 1875, 1 Wyo. 263, 269.

Replevin in Wyoming is statutorily based, having its origin in § 185, et seq., Code of Civil Procedure, adopted at the first session of the Territorial Legislature, 1869. Section 186, Laws 1869, required and still does (§ 1–34–102(a)(ii), W.S.1977), that there be a showing "[t]hat the plaintiff is the owner of the property, or has special interest therein * * *." Plaintiff here has simply failed to show that he has any interest in the rotary table which places him into the position of a secured creditor. The law of replevin in Wyoming has not been displaced by the Uniform Commercial Code. Section 34–21–103, W.S.1977.[9]

Affirmed.

ROONEY, Justice, specially concurring.

In concurring with the majority opinion, I wish to note that I do not reach the point of treating the subject rotary table as an "accession or addition" to any of the items described in schedule A attached to the security agreement. It was not. It replaced another rotary table described in the schedule, but it was not covered by the security agreement.

However, I agree that appellant did not protect himself at the time he sold the rotary table by retaining an encumbrance on it, and that the title and possession acquired by appellees were not subject to any interest of appellant in it.