**In re Richard L. FRICKS and Donna J. Fricks, Debtors.**

**SOUTHTRUST BANK OF SAND MOUNTAIN, Plaintiff,**

**v.**

**Richard L. FRICKS and Donna J. Fricks, Defendants.**

**Bankruptcy No. 84-05855.**
**Adv. No. 84-0582.**

United States Bankruptcy Court, N.D. Alabama.

March 20, 1986.

**884**

Thomas J. Knight, Anniston, Ala., for debtors.

Marvin Franklin, Birmingham, Ala., for plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction—*

The debtors commenced the above-styled case under title 11, chapter 11, United States Code, by the filing of a voluntary petition on November 1, 1984, and the case continues to be pending under chapter 11, with the debtors acting as debtors in possession. SouthTrust Bank of Sand Mountain (hereinafter referred to as the bank) commenced the above-styled adversary proceeding seeking an order of the Court prohibiting the debtors from using cash collateral and requiring the debtors to segregate cash collateral as required by 11 U.S.C. § 363(c)(4).

The plaintiff has filed a motion for summary judgment that the bank has a "perfected security interest" in hogs of the debtors. As defendants, the debtors have filed a motion for a summary judgment denying any relief to the plaintiff. The motions have been argued and submitted for rulings, and the present issue is whether the bank has a perfected security interest in after-acquired hogs, making the proceeds, products, offspring, rents, or profits of those hogs "cash collateral," as defined in 11 U.S.C. § 363(a)—subject to the relief sought by the bank.

*Findings of Fact—*

The material facts necessary for a resolution of these motions are not in dispute. Based on the stipulations of the parties and the affidavit of debtor Richard Fricks, submitted in support of the debtors' motion for summary judgment, the Court finds the facts to be as follows:

1. On March 3, 1982, the bank filed a financing statement in the office of the probate judge of Marshall County, Alabama, covering: "Eight hundred (800) head of hogs-pigs birth to market size, located at above address." The financing statement filed March 3, 1982, otherwise, gives the information required by Uniform Commercial Code (U.C.C.) § 9–402(1), Ala.Code § 7–9–402(1) (1975, rev.vol.1984), bears only the signature of Richard Fricks as debtor, and was filed in the county of the debtors' residence.

2. On December 30, 1982, the bank filed a purported second financing statement containing a more complete and inclusive description of collateral, but unsigned by either debtor.

3. The bank holds security agreements signed only by Richard Fricks dated February 1, 1984, April 2, 1984, and June 1, 1984, granting the bank a security interest in all of Richard Fricks' "hog inventory."

4. The address listed on the financing statement filed March 3, 1982, is for a farm of approximately 20 acres in Marshall County, which is one of two farms owned by the debtors.

5. In March, 1982, the debtors owned a number of hogs which were kept on the farm in question, but all of those hogs were disposed of within a period of not more than four months after March, 1982, in the ordinary course of the debtors' business.

6. At the time the debtors' case was commenced, the debtors kept an undisclosed number of hogs on the farm in question, but all were acquired after March, 1982.

7. Neither financing statement states that it covers after-acquired property or proceeds.

*Conclusions of Law—*

Under 11 U.S.C. § 363(c)(4) the trustee is required to segregate and account for any cash collateral in the trustee's possession, custody or control. The debtors in possession in the above-styled case are subject to the trustee's duties in their chapter 11 case pursuant to 11 U.S.C. § 1107(a).

The bankruptcy statute defines "cash collateral" to mean:

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

Absent a properly perfected security interest in after-acquired hogs, proceeds from the hogs would not be property in which the estate and an entity other than the estate have an interest, and, therefore, the proceeds would not be subject to the limitations on use sought by the bank.[1]

In this case, the purported financing statement filed December 30, 1982, is not sufficient as a financing statement inasmuch as it is not signed by the debtors. U.C.C. 9–402(1). None of the exceptions for omission of the debtors' signature found in U.C.C. § 9–402(2) applies. Therefore, the unsigned financing statement did not perfect a security interest in the property described. *Meads v. Dial Finance Co. of Gadsden,* 56 Ala.App. 84, 319 So.2d 281, 17 U.C.C.Rep. 1380 (1975).

1. The result stated is dictated by 11 U.S.C. § 544(a)(1) which gives the debtor in possession, standing in place of the trustee, the rights and powers of a judicial lien creditor. Under

U.C.C. § 9–301, an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected.

■ Although no question was raised by the parties as to the sufficiency of the description contained in the *security agreements* entered into by the bank and the debtor Richard Fricks, the Court concludes that the descriptions contained in the security agreements are sufficient for purposes of U.C.C. § 9–203. U.C.C. § 9–110 provides: "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Perfection of the granted security interest in hog inventory hinges on the sufficiency of the description of collateral contained in the financing statement filed March 3, 1982.[2]

Two cases cited by the bank are helpful in interpreting U.C.C. § 9–110 for purposes of the instant case. In *Peoples Bank of Bartow v. Northwest Georgia Bank,* 139 Ga.App. 264, 228 N.E.2d 181, 191, 19 U.C.C. R.S. 953 (1976), the Court held that a description of collateral in a financing statement as 100 unspecified head of black angus cattle was sufficient for purposes of the U.C.C. to raise a "warning flag" concerning 100 head of black angus cattle in the debtor's herd. 19 U.C.C.R.S. at 957. The bank also cites *Cargill, Inc. v. Perlich,* 418 N.E.2d 274, 31 U.C.C.R.S. 1159 (Ind. App.1981), as support for its position. The Cargill case involved a hog farm operation where new hogs were purchased, fattened, and sold every six months. It was conceded that the hogs on the farm were not the hogs present when the parties entered into the security agreement. The Court held that a description of collateral in a financing statement as "purchase money interest in all livestock" was sufficient under U.C.C. § 9–110 to include replacement hogs as substituted collateral under U.C.C. § 9–108, where the security agreement covered certain hogs and the proceeds therefrom. 31 U.C.C.R.S. at 1164. The Court found that an ordinarily prudent credit

searcher would make an inquiry as to the exact nature and extent of the collateral based on the description contained in the financing statement. 31 U.C.C.R.S. at 1165.

Very closely related to the circumstances here was the case of *Matter of Fibre Glass Boat Corp.,* 324 F.Supp. 1054 (S.D.Fl.1971), cited by the bank. There a creditor held a perfected security interest in a debtor's "inventory used in the production of boats." The district court denied a bankruptcy trustee's petition for review of an order of the bankruptcy court, after concluding that it would be unreasonable to believe that the parties intended that the creditor was to be given a security interest in the debtor's ever-changing inventory only as of a particular moment, so as to exclude after-acquired or replacement items.

In U.C.C. § 9–109(4), it is stated that "[i]f goods are [classified as] farm products they are [to be classified] neither [as] equipment nor [as] inventory." The use of the word "inventory" there is for purposes of various provisions of the Uniform Commercial Code, however, and the quoted statement there has no bearing on the use of the word "inventory" here—used here in the security agreements to describe the bank's collateral. While the herd of hogs here was not the same as an inventory of boat-building materials and while the term "hog inventory" may be something of a misnomer, the ever-changing nature of the hog herd here is strikingly similar to the inventory's characteristic principally noted in the *Fiber Glass Boat* opinion.

■ The Uniform Commercial Code provides that it should be liberally construed and applied to accomplish its underlying purposes and policies of simplifying and modernizing the law governing commercial transactions, and to permit the con-

---

**2.** The Court further concludes that in all other respects the financing statement meets the for-

mal requisites set forth in U.C.C. § 9–402.

tinued expansion of commercial practices through custom, usage, and agreement of the parties. U.C.C. § 1–102. It appears to the Court that these underlying purposes and policies are best served by eliminating any requirement of "magic words" in a financing statement, such as "after-acquired," where a description is sufficient reasonably to identify what is described, and to suggest to an ordinarily prudent credit searcher that inquiry as to the exact nature and extent of the collateral secured is warranted. In the instant case, the bank was granted a security interest in the hog inventory of Richard Fricks. The financing statement filed by the bank described the collateral as "800 head of hogs-pigs birth to market size, located at above address." Based on the foregoing authority, the Court finds that the description in the financing statement filed March 3, 1982, was sufficient for purposes of U.C.C. §§ 9–110 and 9–402 to permit perfection of the bank's security interest in as many as 800 head of the debtor's hog "inventory," regardless of when the hogs were acquired. The bank's interest was perfected by the filing of the financing statement on March 3, 1982, in the office of the judge of probate in the county of the debtor's residence as required by U.C.C. § 9–401(1)(a).

The Court will enter a judgment on the bank's motion that the bank had a perfected security interest in the hog inventory of Richard Fricks as of the commencement of the debtors' case but that the bank does not have an enforceable security interest as to any interest in hogs of debtor Donna J. Fricks. The defendants' motion is not well taken and will be denied.

What hogs the debtors or either had when the bankruptcy petition was filed, the debtors' respective interests in such hogs, what changes have occurred during the pendency of the case, and the existence and disposition of sale proceeds are factual aspects of the proceeding which remain for confession, stipulation, or trial determination.