A90A2049. KUBOTA TRACTOR CORPORATION v. CITIZENS &
SOUTHERN NATIONAL BANK.
(403 SE2d 218)

BIRDSONG, Presiding Judge.

This appeal is from the order of the trial court granting appellee Citizens & Southern National Bank's (C & S) motion for partial summary judgment and denying appellant Kubota Tractor Corporation's (Kubota) summary judgment motion.

On September 11, 1978, appellant Kubota filed a financing statement giving notice of an alleged security interest between itself, as secured party, and Harvey's, Inc. (Harvey's), a dealer in farm and related equipment, as debtor. Notwithstanding, on September 27, 1978, appellee C & S entered into a security agreement with Harvey's taking a security interest in certain of Harvey's property. The next day, C & S filed a financing statement giving notice of its security interest. On July 30, 1979, Kubota entered into a dealership agreement with the debtor, Harvey's, whereby Kubota appointed the debtor as an authorized dealer of Kubota products. This agreement created and provided for a certain security interest between the secured party Kubota and Harvey's. In 1981, 1982, 1983 and 1984, C & S also executed certain other security agreements with Harvey's. On May 12, 1983, C & S filed a timely continuation of their September 28, 1978 financing statement. On June 25, 1983, Kubota entered a supplemental agreement with Harvey's purporting to amend the description of the property secured by the original dealership agreement. On August 12, 1983, before the expiration of their September 11, 1978, financing statement, Kubota filed a document which on its face purports to be an amendment to their original financing statement. This document bears the handwritten caption of an "Amendment." It contains therein an apparent modification of Kubota's financing statement's description of the secured property, so as to conform that description to the language of the amended dealership agreement and to expressly include a broad after-acquired property clause. On September 10, 1983, five years elapsed from the date of the filing of Kubota's original financing statement. On March 2, 1984, Kubota filed a document expressly identified as a "Continuation" to its original financing statement of September 11, 1978, which did not include any reference therein either to the June 25, 1983, amendment to the dealership agreement or to the captioned "Amendment" document of August 12, 1983. Ultimately, the debtor, Harvey's, was unable to satisfy its obli-

gations either to Kubota or to C & S, and a controversy over priority of security interests arose. *Held*:

1. Appellant Kubota, citing *First Nat. Bank &c. v. McElmurray*, 120 Ga. App. 134, 138 (169 SE2d 720), asserts a security interest attaches only to the extent of the debtor's interest in the property and, as the debtor had in the security agreement *assigned* its interest in the collateral to Kubota, it could not subsequently convey any further interest in the same collateral to C & S.

Notwithstanding that an agreement contains words of assignment, intent of the parties and substance of the agreement, not its form, controls, as "the draftsmen of the code intended that its provisions should not be circumvented by manipulation of the locus of title." *James Talcott, Inc. v. Franklin Nat. Bank &c.*, 194 NW2d 775, 781 (4) (S.C. Mn.); *Georgia-Pacific Corp. v. Lumber Prods. Co.*, 590 P2d 661, 664 (3) (S.C. Ok.); see also *Petition of City of Moran*, 713 P2d 451, 455 (5) (S.C. Ks.). Thus, "the retention of a title by a secured seller does not affect or improve his priority as to other creditors." Anderson, 8 Uniform Commercial Code (3d ed.), Secured Transactions, § 9-202:4; see also OCGA § 11-9-202. Review of Kubota's Dealer Sales and Service Agreement reveals it clearly was the intent of the parties to create, and the agreement did in fact provide for and create a *security interest* as a secured transaction. Constituting a typical "security agreement," Kubota's agreement with Harvey's would not vest any property interest in Kubota which would prevent Harvey's from subsequently vesting an additional security interest in the property in C & S. Appellant's assertion is without merit.

2. The trial court did not err in concluding Kubota's security interest against Harvey's had lapsed due to a failure to file a timely continuation statement. Ga. Code Ann. § 109A-9-403 (2) (OCGA § 11-9-403 (2)), in effect at the time of the execution of Kubota's security agreement and on the date of its lapse, provided that, with exceptions not here applicable, "a filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement *lapses* on the expiration of the five-year period unless a *continuation statement* is filed *prior* to the lapse." (Emphasis supplied.) Compare *In re Cohutta Mills*, 108 BR 815, 820 (N.D. Ga.). "Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse." Ga. Code Ann. § 109A-9-403 (2) (OCGA § 11-9-403 (2)). Thus "[g]enerally, upon lapse of a senior perfected security interest, the holder of a junior perfected security interest advances in priority." *State Savings Bank &c. v. Onawa State Bank &c.*, 368 NW2d 161, 166 (S.C. Iowa); *In the Matter of Reda, Inc.*, 42 UCC Rep. Serv. 1126,

1136-1137 (54 BR 871).

Appellant, however, asserts the document it filed as an amendment, within the requisite five-year period, was also a continuation statement, which would continue the effectiveness of the original financing statement as provided by statute. Ga. Code Ann. § 109-9-403 (3) (OCGA § 11-9-403 (3)). Any such continuation statement must be signed by the secured party, identify the original statement by file number, and state the original statement is still "effective." Id.; *In re Cohutta Mills*, supra at 821. But, "[a] financing statement may be *amended* by filing a writing signed by *both* the debtor and the secured party. An amendment does *not* extend the period of effectiveness of a financing statement." (Emphasis supplied.) OCGA § 11-9-402 (4) (Ga. Code Ann. § 109A-9-402 (4)); Anderson, 9 Uniform Commercial Code (3d ed.), Secured Transactions, § 9-402:66. A continuation sheet cannot contain an amendment to the original financing statement. "A continuation statement may only be employed to continue the original financing statement, and, conversely, additional collateral may not be described in the continuation statement." Anderson, 9 UCC, supra at 9-403:11.

Examination of the document filed by Kubota on August 12, 1983, reveals it was intended to be and was in fact an amendment and not a continuation statement. The document is identified in handwriting as an "[a]mendment," it contains a property description that varies markedly from that contained in the original financing statement, and it is signed by *both* the secured party's representative and the debtor's representative. Accordingly, this document was not merely mislabeled due to clerical error as alleged by appellant, and it was not legally effective as a continuation statement.

Additionally, the document fails to contain the statutorily required statement that the original statement is still "effective." The document only states within an *unchecked* block thereof that the "original financing statement . . . is still active." Compare *In the Matter of Nickerson & Nickerson, Inc.*, 329 FSupp. 93, 96 (5) (D.C. Ne.) ("proceeds" box checked). This recitation is inadequate for two reasons: first, the box in which the statement is contained has not been "checked," whether due to clerical error or otherwise, and thus third parties examining the document would not be placed on notice that the statutorily required statement was intended to have been incorporated therein (in fact, the document on its face reasonably can be construed as not incorporating therein the required statement); secondly, there is a substantial legal difference between a statement which remains "effective" and one which is merely "active," as in the latter case a statement might be lapsed and yet be "active" because litigation or other collateral issues remained pending that demanded action thereon.

In Georgia "[t]he continuation statement must identify the original statement by file number and *affirmatively* state that the original statement is still *effective.*" (Emphasis supplied.) *Tuftco Sales Corp. v. Garrison Carpet Mills,* 158 Ga. App. 674, 677 (282 SE2d 159). "The statute requires continuation statements to identify a still *effective* original filing so as to avoid confusion between competing claimants. . . . The filing, therefore, of a second financing statement which fails to refer to an *effective* original filing does not bring a creditor into substantial compliance" with [the code]. (Emphasis supplied.) *Bostwick-Braun Co. v. Owens,* 634 FSupp. 839, 841 (D.C. E.D. Wi.). Thus even if the "amendment" document of August 12, 1983 had been intended to be and could otherwise qualify as a "continuation statement," it would still fail to prevent the lapse, as "[f]iling a new financing statement which does not . . . state that it is still *effective* is not a substantial compliance with the statute and will not prevent lapse of the statement." (Emphasis supplied.) 79 CJS Supp. 52, Secured Transactions, § 48.

Nor can Kubota claim a filing of the "continuation" statement on March 2, 1984, after the original financing statement had elapsed, would constitute a revival of the original statement. *"The belated filing . . . was of no aid . . . because it could not restore the priority previously lost."* (Emphasis supplied.) *State Savings Bank &c.,* supra at 166 (9); see Anderson, 9 UCC, supra at §§ 9-403:12; 9-403:13. At best, Kubota's lapsed security interest could become reperfected only as of March 2, 1984, the date its belated "continuation" document was filed, and it would remain subordinate to the now superior security interest of C & S. Anderson, 9 UCC, supra at § 9-403:13; see OCGA § 11-9-303 (1).

3. Appellant asserts C & S does not have a valid security interest in the subject collateral because neither the C & S financing statement nor the security agreement contained an after-acquired property clause. As a general rule, "[a] security interest attaches to after-acquired property only if the *security agreement* extends to such property. In the absence of an after-acquired property clause, the security interest extends only to the collateral described in the *security agreement* as being the collateral at the time the agreement is made. . . . [T]here is no requirement that the *financing statement* contain an after-acquired property clause, and the priority of the security interest in after-acquired property is not affected by the omission of such a clause from the financing statement. This is particularly true when the collateral is *inventory* or a stock in trade so that it should be apparent to a reasonable person that it would be a shifting stock of goods which would include after-acquired property." (Emphasis supplied.) Anderson, 8 UCC, supra at §§ 9-204:9; 9-204:10. One court has held that "[u]nder Georgia law, in order to maintain a se-

curity interest in after-acquired collateral, the security *agreement* must provide that such after-acquired collateral is covered under the security agreement." (Emphasis supplied.) *Farmers & Merchants Bank &c. v. Alexander*, 70 BR 419, 422 (M.D. Ga.). However, "[n]o particular words are required to create an interest in after-acquired property and *any* words that would . . . create such an interest is sufficient." (Emphasis supplied.) Anderson, 8 UCC, supra at § 9-204:8, fn. 4. Thus, although usually desirable, it is not mandatory that words such as "after-acquired" or "hereafter acquired" appear in the agreement's description. Further, the Uniform Commercial Code is to be "liberally construed and applied to promote its underlying purposes and policies." OCGA § 11-1-102 (1).

The purpose and effect of the security agreement and the financial statement differ and this difference must be accorded due consideration. "[T]he *purpose* of the description of the collateral in an unfiled security agreement is not to give notice as on a financing statement but is to provide identification of the collateral so as to avoid disputes over its identity." (Emphasis supplied.) *Personal Thrift Plan v. Ga. Power Co.*, 242 Ga. 388, 390 (2) (249 SE2d 72); *James Talcott, Inc. v. Franklin Nat. Bank &c.*, supra at 782 (6). A *security agreement* "sets forth the agreement between the debtor and creditor and must contain a description sufficient to identify the property which they have agreed shall be the collateral for the debt." *Villa v. Alvarado State Bank*, 611 SW2d 483, 486 (4) (CCA Tex.); Anderson, 8 UCC, supra at §§ 9-203:15; 9-203:30.

A *financing statement* is "designed to notify third parties (generally prospective buyers or lenders) that there may be an enforceable security interest in the property of the debtor." *Villa*, supra at 486 (5); *Personal Thrift*, supra at 390; *South County Sand &c. Co. v. Bituminous Pavers Co.*, 256 A2d 514, 516 (1) (2) (S.C. R.I.); compare *James Talcott*, supra at 782, note 3. "A financing statement need *not* provide an interested person with *all* the information he needs to understand a secured transaction but only with the information that such a transaction has taken place and that the particulars thereof may be obtained from the named security party at the address shown." *South County Sand*, supra at 516-517.

The statutory test applied to a security agreement description is that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." OCGA § 11-9-110; see *Personal Thrift Plan*, supra at 390 (2). " 'The test is therefore one of "reasonable identification." . . . The description must be such as will enable third persons, *aided by reasonable inquiries* which the instrument itself suggests, to identify the property. Even though the instrument lacks details, if it gives *clues* sufficient that third persons by reasonable care and diligence

may ascertain the property covered, it is adequate.' " (Emphasis supplied.) *John Deere Co. v. Butler County Implement*, 655 P2d 124, 130 (S.C. Kan.); see generally 79 CJS Supp., supra at § 41, p. 44. Although this same test applies to descriptions in financing statements (*Stephens v. Bank of Camilla*, 133 Ga. App. 210, 211 (1) (210 SE2d 358), aff'd 234 Ga. 293 (216 SE2d 71)), whether a particular description suffices often will depend upon whether it is contained within the security agreement or the financing statement, as both have different *purposes*.

The C & S *financing statement*, at issue, identifies the debtor by *business* name and address and pertinently describes the property as: "*All* farm equipment of every kind and nature . . . *all* kinds of fertilizer equipment, *all* kinds and descriptions of irrigation equipment, as well as *all* parts and accessories . . . used or useful . . . *in the conduct of the business* of undersigned." (Emphasis supplied.)

"Once a financing statement is on file describing property by type, the entire world is warned, not only that the secured party may already have a security interest in the property of that type . . . but that it may later acquire a perfected security interest in property of the same type acquired by the debtor in the future." *James Talcott*, supra at 783. "All that is required [in a filed financial statement] is a minimal description, and it may be by type or kind. The statement need not necessarily contain detail as to collateral, nor any statement of quantity, size, description or specifications, or serial numbers. No preciseness is required with respect to whether the collateral exists at the time of filing *or is to be acquired thereafter*, and no statement of charges, payment schedule, or maturity date need be included in the statement." (Emphasis supplied.) *James Talcott*, supra at 786.

Viewing the financing statement in its entirety, we are satisfied that it *reasonably identified* the property as the inventory and equipment of a *business* which could have a rapid and continuing turnover; thus, third parties were placed on reasonable *notice* of the need for due diligence and prudent inquiry of the identified secured party in order to ascertain accurately the scope of the existing security agreement. And if such had been done, the fact that the security interest encompassed Harvey's after-acquired inventory would have become readily apparent. Accordingly, we find that C & S' financing statement was sufficient as a matter of law to cover after-acquired property. Compare *American Nat. Bank &c. Co. v. Nat. Cash Register Co.*, 473 P2d 234 (3) (S.C. Ok.); *In re Gary & Connie Jones Drugs, Inc.*, 35 BR 608, 610, 612 (2) (USBC Ks.); *In re Fricks*, 58 BR 883, 884 (4) (USBC N.D. Al.).

Although it has been held that, under Georgia law, in order to maintain a security interest in after-acquired collateral, the *security agreement* must provide that such after-acquired collateral is covered

under the security agreement (*Farmers & Merchants Bank &c. v. Alexander*, supra at 422 (2)), "magic words" are not required in the drafting. At the outset, we note OCGA § 11-9-204 (1) provides that, with certain exceptions not here applicable, "a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral." As a general rule, "if we are to carry out the draftsmen's intention and permit the secured creditor to claim a perfected security interest in after-acquired property, comparatively general descriptions of the collateral must suffice for it would be impossible in most such cases for the secured creditor to describe the collateral with any greater precision at the beginning of the agreement." *Brown v. Green*, 618 P2d 140, 143 (S.C. Wy.). Although some courts require an express after-acquired clause in the security agreement, "[t]he majority view appears to be to determine the parties' *intent*, applying a reasonable man test to the facts and circumstances; that is, if a reasonable man looking at the entire security agreement and financing statement would recognize that the parties intended to secure after acquired [property]." *In re Gary & Connie Jones Drugs*, supra at 611 (1). We elect to follow the majority view, as it is but a practical refinement of the broad "reasonable identification" test of OCGA § 11-9-110.

A "security agreement" is an *agreement* which creates or provides for a security interest (OCGA § 11-9-105 (1)), and is to be interpreted the same as any contract (Anderson, 8 UCC, supra at § 9-203:15). For this purpose, " '[a]greement' means the bargain of the parties in fact as found in their language *or by implication* from other circumstances including course of dealing or usage of trade or course of performance as provided in [OCGA §§] 11-1-205 and 11-2-208." (Emphasis supplied.) OCGA § 11-1-201 (3); *Tri-County Livestock &c. Co. v. Bank of Madison*, 228 Ga. 325, 329 (185 SE2d 393); see *In re Fibre Glass Boat Corp.*, 324 FSupp. 1054, 1056 (D.C. S.D. Fla.); *American Nat. Bank*, supra at 235 (1).

"A security agreement should not be held unenforceable unless it is so ambiguous that its meaning cannot reasonably be construed from the language of the agreement itself." *James Talcott*, supra at 782 (8). We do not find such blatant ambiguity in the C & S security agreement. Although factually distinguishable, because the financing statement and not the security agreement contained the alleged after-acquired property clause, *Tri-County*, supra, recognized that "it is quite pertinent whether there was an agreement between [the secured party and the debtor] that the collateral . . . was to include after acquired [property]. Id. at 329. The C & S security agreement granted a security title to and a security interest in certain cultivators "and also *all other goods and property which are held by undersigned for sale* or lease or are . . . *consumed in a business*, together with the prod-

ucts and proceeds thereof *(hereafter collectively called 'Inventory')* ('Goods' and 'Inventory' are sometimes hereafter collectively called 'Collateral') to secure the payment of . . . *all other obligations* of the undersigned to the Bank . . . however created . . . or now or hereafter existing, or due or to become due." Thus, the C & S security agreement on its face clearly revealed that the collateral subject to the security interest included all *"Inventory"* of Harvey's, and that such property was subject to sale or lease. In the case of *In re Nickerson & Nickerson, Inc.*, supra at 96 (4), the court held "when a security interest is taken in *inventory* of a business, after-acquired inventory is automatically covered by the agreement unless it is clearly set out that only certain items of inventory are to be covered." Compare *In re Fibre Glass Boat Corp.*, supra at 1056 (3). ("Inventory by its nature and definition changes from day to day.") The court in *In re American Family Marketing Corp.*, 92 BR 952, 954 (USBC M.D. Fla.), held "it is unnecessary to insert an after acquired property provision in the security agreement because *by the very nature of the inventory* it is reasonable to infer that it was the intention of the parties to create a security interest in the after acquired inventory items. (Emphasis supplied.) Compare *In re Fricks*, supra; *In re Gary & Connie Jones Drugs*, supra at 612 (2). Considering the security agreement in totality, the identity of the parties as therein revealed, and the common meaning of the word "inventory," we find the debtor unequivocally intended to grant C & S a security interest in after-acquired property; and that a reasonable person looking at the entire security agreement and financing statement would recognize the parties' intent to secure such after-acquired property. Accordingly, the security agreement was sufficient as a matter of law.

4. Appellant, placing heavy reliance on *Yancey Bros. Co. v. Dehco, Inc.*, 108 Ga. App. 875 (134 SE2d 828) asserts that the questions of *sufficiency* and identity of the description in a recorded instrument is for the jury except in clear cases. *Yancey*, supra, involves a trover action regarding the sufficiency of a certain recorded bill of sale and is factually distinguishable from this case. Moreover, the Supreme Court clarified the meaning of *Yancey*, supra, in *Bank of Cumming v. Chapman*, 245 Ga. 261 (264 SE2d 201), and concluded that the question of *sufficiency* of description of property, contained in the documents under consideration, is one of law; that of *identity* of the property is one of fact, to be decided by the jury. Id.; accord *First Nat. Bank &c. v. Spicer*, 10 Ga. App. 503 (1) (73 SE 753). We have found the financing statement and security agreement to be sufficient as a matter of law to include not only the debtor's inventory existing at the time the C & S security interest was perfected, but to include a security interest in the debtor's after-acquired property as well. Although it is normally for the jury to resolve questions of fact, where

the fact is shown by clear, palpable and undisputed evidence from which the jury can draw but one conclusion, such question can be resolved as a matter of law through summary judgment. See *Yancey Bros. Co.*, supra at 877 (2) (b); cf. *Soto v. Roswell Townhomes*, 183 Ga. App. 286, 288 (358 SE2d 670). A stipulation of fact between the parties establishes "Kubota sold various tractors and other Kubota products to debtor *to be resold* by debtor at its place of business" (emphasis supplied), and that debtor was in the business of retail sales of tractors, trucks, farm implements and other accessories. Considering all relevant evidence, including the "Statement of Facts Submitted to the Court by Stipulation of the Parties," we find as a matter of law C & S had a security interest in the particular property in question.

"Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where the evidence [, as in this case,] shows clearly and palpably that the jury could reasonably draw but one conclusion." (Citations and punctuation omitted.) *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515). Appellant's contention is without merit.

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 12, 1991 —
REHEARING DENIED MARCH 5, 1991 —

*Heyman & Sizemore, William B. Brown*, for appellant.
*Tillman, McTier, Coleman & Talley, John T. McTier, Chestnut & Livingston, W. Trav Carter*, for appellee.