**In re Charles S. ALBA and Susan K. Alba, Debtors.**

**First National Bank of Barnesville, Movant,**

v.

**Charles S. Alba and Susan K. Alba, Respondents.**

**No. 08–72093–MGD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 11, 2008.

John B. Lyle, Lyle Detling LLC, Marietta, GA, for Debtors.

### ORDER GRANTING LIMITED RELIEF FROM STAY

MARY GRACE DIEHL, Bankruptcy Judge.

Before the Court is Movant's Motion for Relief from Stay ("Motion"), filed August 29, 2008. (Docket No. 39). Movant requests relief from stay as to real estate and personal property of Charles Alba and Susan Alba ("Debtors"). The matter came on for hearing on October 2, 2008, and present at the hearing were Peter Durham, counsel for First National Bank of Barnesville ("Movant"), John Lyle, counsel for Debtors, and Charles Alba ("Debtor"). The issue before the Court is whether Movant had a security interest in Debtors' personal property, which consists of thirty washing machines and dryers that Debtors

used in a commercial laundromat. For the reasons set forth herein, Movant's Motion for Relief from Stay is **DENIED** as to Debtors' personal property. Movant failed to meet its burden to establish a valid security interest in its favor as to Debtors' personal property. Movant's Motion is **GRANTED,** as unopposed, as to Debtors' real property.

## I. *FACTS*

The evidence presented at the hearing included testimony from Kevin Eason, a loan officer employed by Movant, testimony from Debtor, and six documents tendered by Movant. The documents included a loan agreement ("2006 Loan Agreement") (Plaintiff's Exhibit 1), an unsigned copy of a commercial security agreement ("Security Agreement Copy") (Plaintiff's Exhibit 1(a)), an unsigned UCC filing ("UCC Filing")(Plaintiff's Exhibit 2), and certificates of insurance on Debtors' property (Plaintiff's Exhibits 3(a)-(c)). It is undisputed that the parties had entered into two loan agreements, the first dated September 22, 2005, and the second dated October 30, 2006. The October 30, 2006 loan agreement was a renewal of the 2005 loan agreement and is the agreement that is relevant here. Both parties indicated an expectation that the documentation for the two loans would be the same.

With regard to the 2005 loan agreement between Movant and Debtors, Mr. Eason testified that he specifically recalled Debtors signing loan documents because Mr. Eason was the loan officer who originated Debtors' loan. He further stated that Debtors' loan was memorable because the 2005 loan documents were signed at the office of an attorney in Villa Rica, Georgia, at the Debtors' request. Mr. Eason testified that Movant gave Debtors a loan and in return Movant intended to take a security interest in Debtors' building, fixtures, equipment, and inventory. Movant had both the building and the equipment appraised as a going-concern business, again using a professional that Debtors requested. Mr. Eason testified that Movant then protected its purported security interest by requiring Debtors to maintain insurance on both the building and the equipment. Mr. Eason identified copies of Debtors' certificates of insurance, which indicated that Debtors have both the building and the equipment insured. Debtor explained, however, that he has blanket insurance policies to cover both his real property and his equipment, regardless of other parties' security interests in his property, for each of the businesses he owns.

The only document offered to show the parties' prior loan agreement was an unsigned UCC filing, which was filed on September 28, 2005. The UCC filing describes the covered collateral as "ALL EQUIPMENT, RENTS, LEASES, PAYMENTS, FIXTURES, AND INVENTORY NOW OWNED OR HEREAFTER ACQUIRED USED IN CONECTION [sic] WITH THE CAR WASH AND LAUNDRY MAT LOCATED AT 10244 & 10254 MILLARDEN RD, WOODBURY GA." No signed documents, such as a loan agreement or a security agreement, were introduced regarding the 2005 loan between Movant and Debtors. Significantly, Movant failed to produce any documents signed by Debtors in 2005 to indicate that Debtors intended to grant Movant a security interest as described in the UCC filing.[1]

---

1. Mr. Eason testified that the original, signed 2005 loan agreement would have been returned to Debtors because the loan was paid off. Movant did not, however, seek copies of relevant paperwork from the Villa Rica attorney who handled the closing of the loan and,

Evidence of the parties' intent to create a security interest in the equipment with regard to the 2006 Loan Agreement is similarly lacking. Mr. Eason identified the Loan Agreement, dated October 30, 2006, and signed by both Debtors and Mr. Eason on behalf of Movant. Debtor confirmed that he signed the Loan Agreement. It is undisputed that the 2006 Loan Agreement was signed at Movant's office, not at the Villa Rica attorney's office. The Loan Agreement is the only document signed by Debtors and it includes a checked box that reads:

SECURITY: This note is separately secured by (describe separate document by type and date): REAL ESTATE DSD DATED 09/22/05 REC DEED BK 598 PGS 407–414 CSC MERIWETHER COUNTY, GA (1ST MTG 10244 & 10254 MILLARDEN RD, WOODBURY, GA) & ALL EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED (This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

According to Mr. Eason, Movant's system for producing renewal loan documents merely changes the dates on documents while otherwise keeping the original language. Debtor similarly testified that he expected the 2006 Loan Agreement to match the 2005 loan agreement. The Court, however, notes that the 2006 Loan Agreement recites the recording information for the real estate deed dated September 22, 2005. It is unlikely that the 2005 loan agreement, signed on September 22, 2005, would have had the recorded deed's location when the deed was just signed that day. Thus, it seems likely that the 2006 Loan Agreement did vary from the 2005 agreement. It is worth noting, further, that the 2006 Loan Agreement did not refer to the 2005 UCC filing while it did refer specifically to the recorded real estate deed.

Mr. Eason also identified the Security Agreement Copy. The Security Agreement Copy, which is marked "COPY" and lacks the signature of any party, is dated October 30, 2006. The description of collateral in the security agreement is identical to that of the 2005 UCC filing, which is far more extensive than the language in the 2006 Loan Agreement would suggest.[2] Mr. Eason claimed that Debtors signed a security agreement, though no signed agreement was presented to the Court. To explain the absence of that document, Mr. Eason testified that Movant keeps records on microfiche and that Movant was "unable to retrieve" the microfiche for this document. Movant presented no evidence as to what happened to the actual signed document, nor as to why the microfiche was unretrievable.

While Mr. Eason testified that he can remember Debtors signing a security agreement, he explained that the memory of this particular loan signing was due to the unusual circumstance of signing documents at the attorney's office in Villa Rica. The relevant 2006 security agreement, however, would have been signed at Movant's office. Debtor specifically testified that he did not sign the security agreement, or if he did that it was in error. Debtor testified that he never pledges his

---

according to Mr. Eason, made the UCC filing for Movant or serve a notice to produce upon Debtors.

**2.** Specifically, the 2006 Loan Agreement suggests the existence of a separate document to secure "ALL EQUIPMENT," whereas the 2005 UCC filing and the unsigned 2006 Security Agreement Copy indicate a security interest in "ALL EQUIPMENTS, RENTS, LEASES, PAYMENTS, FIXTURES AND INVENTORY."

equipment on loans, and never does so on a package loan with his property. Debtor further testified that he never intended to grant Movant a security interest in Debtors' equipment.

## II. STANDARD APPLICABLE TO MOTIONS FOR RELIEF FROM STAY

 In a motion for relief from stay, the moving party has the burden of proving the debtor's equity in the property at issue. The party opposing the relief from stay has the burden of proof on all other issues. 11 U.S.C. § 362(g). First, however, the moving party has the burden of production and must establish a *prima facie* case for the sought relief. *In re Planned Systems, Inc.,* 78 B.R. 852, 859 (Bankr.S.D.Ohio 1987); *In re Curtis,* 40 B.R. 795, 802 (Bankr.D.Utah 1984); and *In re Setzer,* 47 B.R. 340, 345 (Bankr. E.D.N.Y.1985). Here, the *prima facie* case to be established by Movant is the existence of a valid security interest in Debtors' personal property. Any agreements entered into by the parties arose in Georgia, so the Court will apply the substantive law of Georgia.

## III. APPLICATION OF GEORGIA LAW

Under Georgia law, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." O.C.G.A. § 11-9-203(a). To be enforceable against the debtor, a security agreement for collateral possessed by the debtor must satisfy three conditions: (1) value has been given, (2) the debtor has rights in the collateral, and (3) the debtor has authenticated a security agreement that provides a description of the collateral. O.C.G.A. § 11-9-203(b). Here, the first two of these three requirements have not been challenged. First, Movant gave Debtor value in the form of loan proceeds. Second, Debtor owns the personal property in dispute and therefore has rights in the collateral. Thus, the remaining issue is whether an authenticated security agreement exists.

 According to Georgia's adoption of the UCC, a "security agreement" is "an agreement that creates or provides for a security interest." O.C.G.A. § 11-9-102(72). A valid security agreement in Georgia must meet four requirements: (1) there must be a writing, (2) the writing must be signed by the debtor, (3) the writing must reflect an intent to create a security interest, and (4) the writing must reasonably identify the collateral. *In Re Walker,* 35 B.R. 237, 239–240 (Bankr. N.D.Ga.1983). There are two writings at issue here: the signed 2006 Loan Agreement and the unsigned Security Agreement Copy. Each will be addressed in turn.

### A. The 2006 Loan Agreement does not reflect an intent to create a security interest.

The 2006 Loan Agreement satisfies the first two requirements for a valid security agreement as set forth in *In Re Walker.* It is a writing, and it has been signed by Debtors. The Court does not reach the issue of whether the writing reasonably identifies the collateral, however, because there is insufficient evidence that the writing reflects an intent to create a security interest.

 "Georgia law therefore does not require 'magic words' to create a valid security interest." *In re Hollie,* 42 B.R. 111, 117 (Bankr.M.D.Ga.1984). A security agreement need not contain a clause that "specifically grants" a party a security interest. *In re Hollie,* 42 B.R. 111, 117 (Bankr.M.D.Ga.1984). Rather than look for magic words or specific formats, the Court must look to the general law of

contracts to determine whether the parties *intended* to create a security agreement. *See, e.g., In re Hollie,* 42 B.R. 111, 117 (quoting O.C.G.A. § 11–1–201(3) that "[w]hether an agreement has legal consequences is determined by the provisions of this title, if applicable; otherwise by the law of contracts ..."); and *Kubota Tractor Corp. v. Citizens & S. Nat'l Bank,* 198 Ga.App. 830, 836, 403 S.E.2d 218 (1991) (stating that "[a] 'security agreement' is an *agreement* which creates or provides for a security interest (O.C.G.A. § 11–9–105(1)), and is to be interpreted the same as any contract").

▪ In *Hollie,* the writing at issue did not contain a clause specifically granting a security interest, but the debtors signed a form with the heading "Security Agreement (chattels and crops)," that referred to the creditor as the "Secured Party" and that stated that "[i]t is the purpose and intent of this instrument that ... this instrument shall secure payments of the note." *In re Hollie,* 42 B.R. 111, 117 (Bankr.M.D.Ga.1984). The court held that a security agreement existed. *In re Hollie,* 42 B.R. 111, 117 (Bankr.M.D.Ga.1984). Here, however, the only document signed by Debtors is the 2006 Loan Agreement. Unlike in *Hollie,* there is *no* signed "security agreement," and Movant is not referred to as the "secured party." The only possible indication of the parties' intent relevant to Movant's alleged security interest is in the box titled "SECURITY."

The language of the "SECURITY" box demonstrates, in two ways, Movant's intention to have separate documents creating security interests in Debtors' properties. First, the box states that the loan is "separately secured by (describe separate document by type and date)," which suggests that separate documents were intended to create Movant's security interests. This reading is confirmed by the existence of a recorded deed on Debtors' real estate, which is specifically referenced on the 2006 Loan Agreement. In contrast to the recorded deed, Movant drafted a "Security Agreement" for Debtors' personal property but did not reference it in the 2006 Loan Agreement. Thus, the Loan Agreement itself was not intended to be a security agreement; it was merely intended to reference another document that would create a security interest. A signed copy of that other document, if it exists, was not submitted to the Court.

Second, the language in the checked box shows that Movant did not intend that box to be the legal basis of a security interest. The box states that it is "for your internal use. Failure to list a separate security document does not mean that the agreement will not secure this note." Therefore, the information contained inside the box was intended for the "internal use" of Movant, not to legally bind Debtors or to impair any possible legal rights of Movant.

While Movant has clearly established that Movant desired a security interest in Debtors' personal property, the 2006 Loan Agreement does not indicate an agreement between Movant and Debtors to grant such an interest to Movant. Further, Debtor's testimony was that he did not intend to create a security interest in favor of Movant in Debtors' personal property. Movant has failed to demonstrate that the 2006 Loan Agreement shows Debtors' agreement to grant Movant a security interest in Debtors' personal property.

**B. There is insufficient evidence that Debtors signed a security agreement.**

▪ Movant's Security Agreement Copy does not satisfy the four requirements of *In re Walker* for a valid security agreement. While the Security Agreement Copy is a writing, which purports to grant

a security interest, it is not signed by Debtors. To be valid, a security agreement must be signed by the debtor. *In Re Walker*, 35 B.R. 237, 239–240 (Bankr. N.D.Ga.1983). In the present case, no signed security agreement was submitted to the Court. Instead, the Court is asked to rely on the unsigned Security Agreement Copy and contested testimony that Debtors did sign a security agreement, which was not produced because Movant's microfiche of the agreement could not be retrieved.

The existence of a signature on a document is part of the contents of that document. *See Zander v. Ogihara Corp.*, 213 Mich.App. 438, 540 N.W.2d 702 (1995), *appeal denied*, 453 Mich. 934, 557 N.W.2d 307 (1996). "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." Fed.R.Evid. 1002. Other evidence of the document's content is admissible if the original is lost, destroyed, unobtainable by judicial process or procedure, or if the document is related only to a collateral matter. Fed.R.Evid. 1004. None of these exceptions to the requirement of an original apply here. First, whether the security agreement contains Debtors' signatures is not a collateral matter here; it is the issue at hand. Second, there is no evidence that a signed agreement was lost, destroyed, or is unobtainable by judicial process or procedure. Mr. Eason testified that Movant keeps copies on microfiche, and that the microfiche here is unavailable.

The mere fact that Movant's microfiche is inexplicably unretrievable does not satisfy the Court that the original document is lost, destroyed, or unobtainable. Movant provided no evidence of what happened to the original signed document. While a duplicate, like the microfiche, would be admissible, Movant provided no explanation for why the microfiche copy was unretrievable. Thus, the Court does not have sufficient information to find that the original agreement, or a duplicate of that agreement, was lost, destroyed, or is unobtainable. Without that information, the Court cannot rely on Mr. Eason's testimony or on the Security Agreement Copy as alternative proofs of the contents of the agreement.

Even if the Court were to consider Mr. Eason's testimony, that he specifically remembers seeing Debtors sign the security agreement, the Court would remain unconvinced that Debtors signed a security agreement in 2006. Mr. Eason's testimony was that he remembered Debtors signing the security agreement because the location of the signing, an attorney's office in Villa Rica, was unusual. By Mr. Eason's own testimony, however, the parties signed documents at the Villa Rica office only in 2005. Thus, Mr. Eason's memory of a 2006 signing in Villa Rica must be mistaken.

Absent admissible evidence of Debtors' signature, the Security Agreement Copy presented to the Court is insufficient evidence of a valid security agreement. Accordingly, the Court finds that no valid security agreement has been presented to the Court and holds that the Security Agreement Copy does not create a security interest in favor of Movant in Debtors' personal property.

## IV. *CONCLUSION*

Movant has failed to establish a *prima facie* case showing a valid security interest in favor of Movant in Debtors' personal property. The 2006 Loan Agreement does not create a security interest nor did Movant demonstrate that the parties intended it to do so. Additionally, Movant did not produce a security agreement signed by

Debtors, as required by Georgia state law. Accordingly, it is

**ORDERED** that Movant's Motion for Relief from Stay with respect to Debtors' personal property is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Movant's Motion for Relief from Stay with respect to Debtors' real property is **GRANTED** as unopposed.

The Clerk shall serve a copy of this Order upon Debtors, counsel for Debtors, Movant, and counsel for Movant.

**IT IS ORDERED**