In re MAKO, INC., Debtor.

RETAIL MARKETING COMPANY, Plaintiff,

v.

NORTHWEST NATIONAL BANK and Jim Treat, Defendants.

NORTHWEST NATIONAL BANK, Counter–Claimant,

v.

RETAIL MARKETING COMPANY, Counter–Defendant.

Bankruptcy No. 88–70475.
Adv. No. 90–7011.

United States Bankruptcy Court, E.D. Oklahoma.

June 1, 1990.

Thomas A. Creekmore, III, Tulsa, Okl., for counter-defendant.

D. Lamar Pettus, Fayetteville, Ark., for counter-claimant Northwest Nat. Bank.

No atty. for defendant Jim Treat.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On this 1st day of June, 1990, a Motion to Transfer filed by Defendant Northwest National Bank ("Northwest") (Docket Entry No. 7) with Brief in Support (Docket Entry No. 8), together with an Objection to Motion to Transfer filed by the Plaintiff (Docket Entry No. 13) and Response to the Objection to the Motion filed by Defendant Northwest (Docket Entry No. 17) with Brief in Support (Docket Entry No. 18) came before this Court for consideration.

Pursuant to the Scheduling Conference conducted by this Court on April 13, 1990 and the Order emanating therefrom, the parties submitted Stipulations of Fact upon which this Court could rely for its final resolution of this matter.

After review of the various pleadings referenced hereinabove and the applicable law in the area, this Court does hereby enter the following Findings of Fact and Conclusions of Law in conformity with B.R. 7052 in this core proceeding:

## STATEMENT OF ISSUE

At issue in this case is whether the Defendant Northwest is entitled to a Jury Trial in this action.

## FINDINGS OF FACT

The parties have stipulated to the following facts for this Court to utilize in its determination on the Motion:

1. The Defendant, Northwest National Bank of Fayetteville, Arkansas, is a national banking institution with its principal place of business located in Fayetteville, Washington County, Arkansas.

2. When the Debtor, Mako, Inc., filed bankruptcy, it listed Northwest National Bank as a secured creditor on Schedule A–2 filed with the Petition in this case.

3. The amount in controversy in this case exceeds the sum of $20.

4. The Plaintiff is suing the Defendants to avoid alleged fraudulent conveyances under § 548 of the Bankruptcy Code, preferential transfers under § 547 of the Bankruptcy Code, post-Petition transfers under § 549 of the Bankruptcy Code, set-offs under § 533 (sic) of the Bankruptcy Code, and fraudulent conveyances under § 544 of the Bankruptcy Code and Oklahoma fraudulent conveyances laws, and to recover such transfers and conveyances under § 550 of the Bankruptcy Code.

5. The Plaintiff has asked the Court to avoid the transfers in question, to order the return of the amounts transferred, with interest, and for costs.

6. This cause of action does not involve public rights.

7. The Defendant, Northwest National Bank, has not filed a proof of claim in the Mako, Inc. bankruptcy case.

Additionally, this Court takes judicial notice of the file wherein the following pleadings and actions are revealed:

8. On December 30, 1988, the then Debtor–in–Possession filed a Motion for Authority to Sell Out of the Ordinary Course of Business Store No. 657 located in Springdale, Arkansas. Within said Motion, the DIP stated that the store equipment

which was included in the sale "is encumbered at Northwest National Bank in Fayetteville, Arkansas." The Motion further states that "Debtor represents that Northwest National Bank, who holds a lien on the store equipment in the amount of $3,010.62, has consented to sale, free and clear of such interest, and that the price at which the store equipment is to be sold is greater than the aggregate value of Northwest National Bank's lien on said property.... That Northwest National Bank's lien shall be paid in full upon receipt of the funds from sale."

9. On January 27, 1989, Defendant Northwest filed a Response to Motion for Authority to Sell Out of the Ordinary Course of Business wherein Northwest stated that "Northwest National Bank has no objection to the sale of said equipment as long as the sums remaining due to Northwest National Bank on said equipment are paid from the proceeds of said sale." Said sums amount to $2,308.24 with interest accruing at the rate of 67 cents per day.

10. On February 2, 1989, this Court conducted a hearing on the Motion and Response wherein counsel for the DIP appeared and announced that all parties were in substantial agreement. Based upon this announcement and the Response of Northwest, the Motion was sustained. On March 24, 1989, a proposed Order was submitted by the DIP which granted the Motion.

11. Specifically, the Debtor included Northwest in its Schedules in two capacities: as a secured creditor on the Note incurred in August of 1984 on store equipment in Store No. 657 wherein a fair market value was assigned of $35,000 on a claim of $10,078.53 and an unsecured obligation on Store No. 626 incurred June of 1976 in the amount of $1,600 and on Store No. 635 incurred March of 1975 in the amount of $1,100.

## CONCLUSIONS OF LAW

A. In its Motion to Transfer, Defendant Northwest limited the basis of its request for transfer to the propriety of a Jury Trial on this matter and this Court conducting such a Trial. A Scheduling Conference was conducted wherein this particular limited issue was addressed for further briefing and resolution. However, in its unsolicited Response to Objection to Motion to Transfer, Defendant Northwest raised additional objections to this Court's jurisdiction. Since these matters were not initially raised in the Motion to Transfer, the sole issue that will be addressed in this Order shall be the Defendant's request for a Jury Trial.

B. The Defendant Northwest rests its authority for requesting a Jury Trial on this matter on the relatively recent pronouncement by the United States Supreme Court and the progeny that it has spawned. See *Granfinanciera, S.A., et al. v. Nordberg*, —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *In re Bouldin*, 1990 WL 95746, 1990 Bankr. Lexis 60 (Bankr.N.D. Ga.); *In re Ben Cooper*, 896 F.2d 1394 (2nd Cir.1990); *Committee of Unsecured Creditors of North Carolina Hospital Association Trust Fund v. Memorial Mission Medical Center, Inc.*, 112 B.R. 759 (Bankr. E.D.N.C.1990).

In *Granfinanciera*, the Supreme Court was faced in a Chapter 11 case with a party who had *not* submitted a claim against the bankruptcy estate. The Trustee in bankruptcy was pursuing an action to recover an allegedly fraudulent transfer against this party. The Supreme Court found under these circumstances that the party possessed a right to a Jury Trial in accordance with the Seventh Amendment of the United States Constitution. Although at first blush, the case at bar would appear to align itself with the facts of the *Granfinanciera* case, further analysis and interpretation of the Supreme Court's position reveals otherwise.

■ The act of filing a proof of claim in a bankruptcy case for the purpose of sharing in the distribution of estate assets does not always carry with it the significance that one might presume as a method of "perfecting" or establishing one's rights to proceeds of the estate. In a Chapter 11 reorganization case, the sole party *required* to file a proof of claim is "any

creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated ..." B.R. 3003(c)(2). The consequences of a creditor or equity security holder's failure to comply with this Rule are clear in that "... any creditor who fails to [file a required proof of claim] shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

In the case at bar, the creditor was scheduled as both a secured and an unsecured creditor in varying amounts, and in neither instance was the claim "disputed, contingent or unliquidated" and thus a proof of claim was not required and was not filed.

C. The Supreme Court has given the filing of a proof of claim a significance of consenting to the jurisdiction and the "process of allowance and disallowance of claims" over which the Bankruptcy Court may conduct a non-jury trial. The Court has stated that "by presenting their claims [creditor] respondents subjected themselves to all the consequences that attach to an appearance ..." *Granfinanciera*, supra 109 S.Ct. at p. 2799, citing at Footnote 14 *Katchen v. Landy*, 382 U.S. 323, 335, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966).

 However, this "consent to jurisdiction" cannot be limited by the act of filing a proof of claim since such a claim is not required under the Bankruptcy Code. As a result, we find that it is not the filing of the proof of claim which gives rise to the right to a Jury Trial, but rather the pecuniary and proprietary benefit which a particular creditor actually or potentially derives from the estate and the level of participation of that creditor in the bankruptcy process.

In the case at bar, Defendant Northwest clearly participated in the bankruptcy process in responding to a Motion to Sell property in which it possessed a security interest. This Response included consenting to the sale *so long as* Defendant Northwest received the proceeds from said sale equal to the amount still due from the Debtor to Northwest. These sales proceeds represented property of the bankruptcy estate. By both receiving the proceeds from the sale and participating in this action, Defendant Northwest derived a benefit from the estate and thus subjected itself to the jurisdiction of this Court and the participation in the action for fraudulent and preferential transfers *without* a jury.

D. Clearly, the Supreme Court in the *Granfinanciera* case was determining the creditor's right to a Jury Trial under very limited and specific circumstances. The Court makes clear that these circumstances include the non-filing of a claim. However, for this ruling to have any rational meaning in the bankruptcy process, it must include the circumstances of benefit from and participation in the bankruptcy process by the particular creditor.

The *Granfinanciera* case, as many commentators have noted, raised many more questions than it answered, and will undoubtedly require further action by the highest Court in this nation.

IT IS THEREFORE ORDERED that the Defendant's Motion to Transfer and request for Jury Trial therein is hereby denied.