### In re CIS CORPORATION, Continental Information Systems Corporation, et al., Debtors.

**James P. HASSETT, as Chapter 11 Trustee of CIS Corporation, Continental Information Systems Corporation, et al., Plaintiffs,**

v.

**BANCOHIO NATIONAL BANK, Defendant.**

**91 Civ. 6647.**

United States District Court, S.D. New York.

Sept. 14, 1994.

---

Kirkland & Ellis, New York City, for James P. Hassett.

Lawrence P. Gottesman, Jones, Day, Reavis & Pogue, New York City, for BancOhio Nat. Bank.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this Chapter 11 bankruptcy case I am asked to withdraw the reference to the bank-

ruptcy court for the Southern District of New York with respect to an adversary proceeding filed by the Debtors' Trustee, James P. Hassett (the "Trustee"), against defendant BancOhio National Bank ("BancOhio"). BancOhio moves to withdraw the reference. For the reasons discussed below, I decline to do so.

### BACKGROUND

CIS is in the business of marketing and managing computer equipment. BancOhio is a national banking corporation. On January 13, 1989, CIS and eleven of its affiliates (collectively the "Debtors") each filed petitions for relief under Chapter 11 of the bankruptcy code. On July 12, 1991, the Debtors' Trustee commenced an adversary proceeding in bankruptcy court against BancOhio and Indiana Bell Telephone. On August 20, 1991, the Trustee filed an amended complaint in the adversary proceeding, deleting the claims against Indiana Bell.

BancOhio has not filed a claim in the bankruptcy proceeding. On March 7, 1990, however, it filed a motion with the bankruptcy court pursuant to 11 U.S.C. § 365(d)(2) to compel the Trustee to assume or reject certain of the Remarketing Agreements. The adversary proceeding has its roots in a series of transactions between CIS and BancOhio taking place from December 1987 to November 1988. CIS takes the position that these transactions constituted a method of clever "financing" by BancOhio of computer equipment which had been initially purchased by CIS and leased to third parties (the "Leases"). Each Lease was assigned as part of the transaction to BancOhio, who thereby became entitled to the quarterly lease payments. In connection with each transaction, CIS and BancOhio also entered into an agreement in which CIS was appointed as the exclusive agent to remarket the equipment upon expiration of the Lease (the "Remarketing Agreement"). Pursuant to this agreement, CIS received a fee from the proceeds of any subsequent sale or lease of the equipment.

BancOhio strenuously disputes the characterization of these transactions as financing transactions, contending instead that CIS "sold" the equipment to BancOhio. BancOhio avers that it was not merely a lender, but an equity investor and the legal titleholder to the equipment. This distinction lies at the heart of the adversary proceeding.

In the adversary proceeding, the Trustee asserts eight causes of action against BancOhio. The First Claim seeks to have the transactions recharacterized as financing transactions; the Second Claim seeks a declaration that BancOhio does not have a perfected security interest in the equipment; the Third Claim seeks a declaration that the Trustee may avoid any unperfected security interest of BancOhio in the equipment; the Fourth Claim alleges that the Trustee may use, sell or lease the equipment pursuant to 11 U.S.C. § 363; the Fifth and Eighth Claims allege that BancOhio wrongfully converted certain equipment, as well as an "accidental" payment of a sum of money made by CIS to BancOhio; and the Sixth and Seventh Claims seek an order requiring BancOhio to turn over to the estate the wrongfully converted equipment and payment, or the value thereof.

Shortly after BancOhio filed its answer and jury demand in the adversary proceeding, it filed the motion presently before this Court. BancOhio contends that the claims in the proceeding are non-core and that it is entitled to trial by jury of the facts underlying the claims. Because the law of this circuit prohibits bankruptcy courts from holding jury trials in non-core matters, BancOhio avers that the adversary proceeding must be withdrawn from consideration by the bankruptcy court. In a letter to this Court dated August 25, 1992, BancOhio for the first time also advances the argument that mandatory withdrawal under § 157(d) is required in light of a summary judgment motion made by CIS in the adversary proceeding, which allegedly "raises issues which will require substantial and material consideration of both non-Bankruptcy Code federal statutes and Title 11."

Not surprisingly, the Trustee disputes each of these contentions. The Trustee pre-

liminarily contends that this Court should remand the case to the bankruptcy court to initially characterize the nature of the proceeding as core or non-core. If this Court declines to remand the case and makes the initial decision, the Trustee argues that BancOhio has failed to demonstrate justification for either mandatory or discretionary withdrawal. According to the Trustee, the matters are core, BancOhio is not entitled to a jury trial, and even if a jury trial were available, withdrawal of the reference is not required because the bankruptcy court may hold jury trials in core matters.

## DISCUSSION

### I. *Mandatory Withdrawal*

■ 28 U.S.C. § 157(d) provides:

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

Mandatory withdrawal pursuant to the second sentence of § 157(d) is narrowly applied. It is warranted when resolution of the matter would require the bankruptcy judge to "engage in significant interpretation, as opposed to simple application," of federal non-bankruptcy statutes. *City of New York v. Exxon Corporation*, 932 F.2d 1020, 1026 (2d Cir. 1991); *see also In re Adelphi Institute, Inc.*, 112 B.R. 534, 536 (S.D.N.Y.1990) (mandatory withdrawal not warranted where resolution of the matter would not entail "substantial and material consideration" of federal non-bankruptcy statute); *In re Chateaugay Corp.*, 108 B.R. 27, 28 (S.D.N.Y.1989) (same). As then-District Judge Leval explained:

"It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge."

*In re Johns–Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y.1986) (emphasis in original.)

■ It follows that mandatory withdrawal is appropriate when "substantial and material" potential conflicts exist between non-bankruptcy federal laws and Title 11, *see In re Chateaugay Corp.*, 88 B.R. 581, 588 (S.D.N.Y.1988), or when complicated interpretive issues of first impression are raised under non-bankruptcy federal laws. *See In re Oil Co., Inc.*, 140 B.R. 30, 35 (E.D.N.Y. 1992).

■ In his motion for summary judgment in the adversary proceeding, the Trustee argues that the transactions should be recharacterized as loans because the National Bank Act, the Competitive Equality Banking Act (the "CEBA") and certain related regulations issued by the Comptroller of the Currency prohibit banks from engaging in leasing unless the leasing transaction constitutes the functional equivalent of a loan. BancOhio contends that this argument infuses the case with issues which will require the bankruptcy court to substantially interpret these statutes and regulations. BancOhio suggests that the court will be required to examine the purpose underlying the laws and regulations and the interplay of the statutes and regulations with various provisions of Title 11.

The Trustee counters that the issues presented by his argument require straightforward application of the laws and regulations, a factor which prevents the case from being subject to mandatory abstention. I agree.

There is no substance to BancOhio's averment that mandatory withdrawal applies in this case. I cannot conclude that resolution of the claims in the adversary proceeding will require any more than straightforward application or routine interpretation of the Na-

tional Banking Act, the CEBA and the identified regulations. Although BancOhio offers the sweeping conclusion that significant interpretation of the statutes and regulations and their underlying policy considerations is compelled, it does not explain why that must be so or offer the slightest support for its conclusion.

Nor does BancOhio identify any potential conflict between provisions of Title 11 and the identified statutes and regulations. BancOhio says cryptically, "Any court addressing [CIS' arguments] will have to examine ... the interplay of these statutes and regulations with numberous [sic] provisions of Title 11." No doubt that is often the case in an adversary proceeding involving application of non-bankruptcy federal laws. But, unless it desires evisceration of Title 11, BancOhio can hardly suggest that this Court is required to withdraw the reference in order to scrutinize whether there *might* be a conflict between the federal law and Title 11 when it has not identified the substance of conflict.

Finally, BancOhio suggests that because there is a "paucity of case law addressing the issue of 'recharacterization' in the context of the National Bank Act and CEBA," mandatory withdrawal applies. Yet, the fact that there may be relatively few cases applying the statutes and regulations in the particular context of recharacterization does not by itself suggest the need for their *significant* interpretation by the bankruptcy court. Again BancOhio has failed to explain why the bankruptcy court will be required to do anything more than simply apply those laws to the facts and determine whether they require the recharacterization of the sale transactions as loans.

Accordingly, BancOhio has failed to demonstrate that any reason for mandatory withdrawal exists.

## II. *Discretionary Withdrawal*

### A. *Core v. Non–Core Determination*

Having decided that mandatory withdrawal is inapplicable, the next step in my analysis is to decide whether the claim is core or non-core since this determination will significantly affect whether "cause" for withdrawal has been established.

In *Northern Pipeline v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held unconstitutional the broad congressional grant of jurisdiction to the non-Article III bankruptcy courts to decide "private rights" matters, such as state breach of contract claims. *Marathon* involved the adjudication in bankruptcy court of a state breach of pre-petition contract claim brought by a debtor against a defendant who had not filed a claim with the bankruptcy court. As explicated in a later decision, *Marathon* held "that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985).

Congress' response to the *Marathon* decision was the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. § 151, restructuring the jurisdiction of the bankruptcy courts by drawing a distinction between "core" and "non-core" proceedings. Pursuant to that Act, bankruptcy courts have jurisdiction to adjudicate and render final orders and judgments in matters constituting core proceedings pursuant to 28 U.S.C. § 157(b)(1). Although the statute does not define "core," § 157(b)(2) sets forth a non-exclusive list of matters falling under that category. In proceedings involving core matters, a district court reviews the bankruptcy court's findings of facts under a "clearly erroneous" standard and his conclusions of law *de novo. See Brunner v. New York State Higher Educ. Services,* 831 F.2d 395, 396 (2d Cir.1987).

Bankruptcy courts may also hear matters which are not core but are otherwise related to the bankruptcy case. *See* 28

U.S.C. § 157(c)(1). In these non-core related matters, which are also left undefined by the statute, bankruptcy courts may issue findings of fact and conclusions of law, but are not empowered to issue *final* orders. The district court reviews both factual findings and legal conclusions of the bankruptcy court in these matters *de novo*. *See* § 157(c)(1); *see also* Bankruptcy Rule 9033(d); *IAM v. Eastern Air Lines*, 121 B.R. 428, 432 n. 5 (S.D.N.Y.1990), *aff'd*, 923 F.2d 26 (1991). Because the provision for *de novo* review of the bankruptcy court's findings of fact in non-core related matters is incompatible with the Seventh Amendment's guarantee that jury findings are not to be reexamined, the Second Circuit has definitively held that the constitution prohibits bankruptcy courts from conducting jury trials in non-core matters. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

The fact that an adversary proceeding concerns non-core matters for which the right to a jury trial is available is sufficient cause for discretionary withdrawal of reference under § 157(d). *See Orion Pictures*, 4 F.3d at 1101; *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir.1990) (holding it was abuse of discretion not to permit withdrawal of reference of adversary proceeding of non-core matters in which nondebtor had asserted its right to jury trial); *In re Baitinger Elec. Co., Inc.*, 94 B.R. 33, 34 (S.D.N.Y.1988); *Pied Piper Casuals, Inc. v. Insurance Co. of State of Pa.*, 72 B.R. 156, 160 (S.D.N.Y.1987). Under governing Second Circuit precedent, however, bankruptcy courts are permitted to hold jury trials in core proceedings. *See In re Orion Pictures Corp.*, 4 F.3d at 1101; *In re Ben Cooper*, 896 F.2d 1394, 1403 (2d Cir. 1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).

1. *Proper Resolution by this Court*

The Trustee urges this Court to remand the case in order to allow the bankruptcy court an opportunity to first make the core/non-core determination, referring to the language of 28 U.S.C. § 157(b)(3) which provides in relevant part:

> "The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."

While some courts have construed this language as establishing a preference for initial determination of the issue by the bankruptcy court, nothing in this or any other statute vests that power exclusively in the bankruptcy court. *See In re Harbor Park Associates Limited Partnership*, 112 B.R. 555, 557 (S.D.N.Y.1990) (holding that where bankruptcy court has not made a binding decision on core/non-core issue, district court is empowered to make it in the first instance); *Interconnect Telephone Services v. Farren*, 59 B.R. 397, 401 n. 2 (S.D.N.Y.1986). The circumstances of this case dictate the need for an initial ruling by this Court with respect to the nature of the adversary proceeding. If this Court ultimately determines that withdrawal of the reference is necessary, such a decision should be made sooner rather than later. Remanding the case to the bankruptcy court for determination would generate an undue delay occasioned by an unnecessary added layer of judicial decisionmaking. Once the bankruptcy court makes its decision, it would undoubtedly come back to this Court for *de novo* review. An initial decision by this Court is therefore necessary in the interest of conserving judicial resources and preventing any further delay of these proceedings.

2. *Standards for Core/Non–Core Determination*

It is generally accepted that a core proceeding is one which "invokes a substantive right provided by title 11 or [ ] is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987); *see also In re Riverside Nursing Home*, 144 B.R. 951, 955 (S.D.N.Y.1992); *In re J.T. Moran*, 124 B.R. 931, 937 (S.D.N.Y.1991); *In*

re *Brooks Fashion Stores, Inc.,* 124 B.R. 436 (S.D.N.Y.1991); *In re Braniff International Airlines, Inc.,* 159 B.R. 117, 125 (E.D.N.Y. 1993). The Second Circuit has refined this analysis by stating that "[t]he relevant analysis is whether the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the *core* of federal bankruptcy power." *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1389 (2d Cir.1990) (holding that adversary proceeding arising from proof of claim filed with bankruptcy court was core despite fact that it involved breach of contract) (citing *In re Wood, supra* ) (emphasis in original). It follows that, "bankruptcy courts are not precluded from adjudicating state law claims when such claims are *at the heart* of the bankrupt estate." *In re Ben Cooper, Inc.,* 896 F.2d at 1399 (emphasis added).

### 3. *Determination of Core/Non–Core Nature of Adversary Proceeding*

The Trustee's position is that each of the claims falls within at least one category of § 157(b)(2) and the entire proceeding therefore falls under the bankruptcy court's core jurisdiction. Conversely, BancOhio contends that the adversary proceeding is non-core because it asserts "garden variety" claims for the recovery of chattel (Counts One, Four and Six), conversion (Counts Five and Eight) and recovery of money had and received (Count Seven), all arising under state law. Both sides caustically criticize each other's use of "semantics" to obscure the real issues. I agree that it is useless to categorize the claims by means of the words used to describe them. In making my determination I will look beyond the labels to the substance of the action in order to discover whether it can be fairly said to arise under the bankruptcy code and falls within the bankruptcy court's core jurisdiction. *See e.g. In re Treadway,* 117 B.R. 76, 81 (Bankr.D.Vt. 1990) (mere characterization of claims within the terms of the bankruptcy statute is not dispositive of core/non-core determination).

The Trustee's characterization is overly formalistic. It cannot be contested that

BancOhio is at least by appearances the owner of the property which is the subject of the action. The transactions were termed "sales," title to the property passed to BancOhio in the form of bills of sale, and BancOhio received the tax benefits of ownership of the equipment. A resolution of the dispute surrounding ownership of the property must therefore be made in the debtor's favor before any traditional bankruptcy action, such as turnover of the property to the estate, may be undertaken.

It follows that regardless of the label one chooses to attach to them, in substance and spirit the Trustee's action is fundamentally an action to determine disputed *ownership* in property. Such an action arises under state law, *see* N.Y.Civ.Prac.L. & R. § 7101 (McKinney 1992); *In re Estate of Schneier,* 74 A.D.2d 22, 426 N.Y.S.2d 624, 625 (4th Dep't 1980) (action to recover property where title is disputed is in nature of common law replevin), and is independent and outside the reach of the bankruptcy process. Terming the action one for "recharacterization" of the transaction as a financing arrangement makes the core argument fare no better. There is nothing unique to the bankruptcy code involved in an action for recharacterization of a sales transaction as a financing arrangement. Such an action generally involves application of principles of contract interpretation. *See e.g. In re PCH Associates,* 804 F.2d 193 (2d Cir.1986) (recharacterization of lease required application of parol evidence rules); *Sierra Diesel Injection Service, Inc. v. Burroughs Corp.,* 890 F.2d 108, 115–116 (9th Cir.1989) (recharacterization of lease as financing arrangement involved examination of the terms of the alleged lease); *Pactel Finance v. D.C. Marine Service Corp.,* 136 Misc.2d 194, 518 N.Y.S.2d 317, 319 (Dist. Ct. Nassau Co.1987) (terms of lease and purchase option established that "essential nature of transaction was sale rather than true lease"); *People v. The Service Institute, Inc.,* 101 Misc.2d 549, 421 N.Y.S.2d 325, 326 (Sup. Court Suffolk County 1979) (recharacterization of sale of accounts receivable as loan transaction required examination of contract

to ascertain parties' true intent). As most of the above cases demonstrate, such claims often arise outside of the bankruptcy context. *See e.g. Sierra Diesel, supra; The Service Institute, supra.*

The Trustee cannot convert what are essentially state law claims of disputed title arising from pre-petition transactions into claims falling within the core jurisdiction of the bankruptcy court. His attempt to pigeonhole the claims into the neat categories of core matters provided by § 157(b)(2) cannot obfuscate the reality that these are claims which at most only incidentally implicate provisions of the bankruptcy code.

### a. *The Recharacterization Claim*

The Trustee considers the First Claim, which I will call the "recharacterization" claim, core for three reasons. First, the power to recharacterize purportedly falls under 11 U.S.C. § 105 which, *inter alia,* empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Second, the Trustee contends that the proceeding is core because it is a partial response to BancOhio's § 365 motion, resolution of which requires a determination of the validity of the lease. Third, the Trustee asserts that the action falls under the catch-all provisions of § 157(b)(2)(0): "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship....", and § 157(b)(2)(A): "matters concerning the administration of the estate."

None of these arguments is availing. A debtor cannot reclassify what is essentially a non-core state law cause of action by declaring that it affects either "the liquidation of assets of the estate" or "the administration of the estate." To do so would be to allow this amorphous provision to emasculate *Marathon.* I have no doubt a determination that the Debtors are the legal titleholders to the property will inure to the benefit of the bankrupt estate. But that benefit alone is insufficient to ground core jurisdiction. The

Second Circuit expressly rejected this view in *Orion Pictures,* 4 F.3d at 1102 (noting that allowing any contract action which inures to the benefit of the debtor estate to be deemed core under § 157(b)(2)(A) would create "an exception to *Marathon* which would swallow the rule"). Practically any claim brought by a trustee could be considered to have some connection to the estate's administration if the end result might be to bring property into the estate. But that does not mean that all such claims involve core matters. *Cf. In re Ben Cooper,* 896 F.2d at 1398 ("Matters that merely concern the administration of the bankrupt estate tangentially are related, non-core proceedings.") (citation omitted).

Nor can a debtor use the bankruptcy court's general equity power under § 105 for that same purpose. That provision merely provides the court with equitable powers to further the substantive provisions of the code, it does not empower the court to *create* a cause of action otherwise unavailable under the bankruptcy code. *See Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985) (holding that § 105 did not give bankruptcy court authority to create a lien to secure payment of environmental cleanup costs when the contract obligating the debtor to pay such costs did not provide for such a lien); *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (holding that bankruptcy court did not have power under § 105 to authorize monthly allowance for support of debtor's spouse who did not have a matured claim for support when petition was filed; court noted that § 105 does not "constitute a roving commission to do equity"); *In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. 49, 54 (Bankr.S.D.N.Y.1988) ("§ 105(a) does not create substantive rights otherwise unavailable or grant the bankruptcy court an unrestricted license to do equity") (citations omitted).

Finally, the Trustee's assertion that the "recharacterization" action is core because it involves determination of the validity of a lease in the context of BancOhio's § 365 motion simply does not hold water. It is inaccu-

rate to suggest that the adversary proceeding requires a determination of the validity of the leases. The fundamental underlying issue in the adversary proceeding is whether the estate is entitled to ownership of the leased property, not whether the Leases are valid. Nothing in BancOhio's request for an order compelling the Trustee to compel or reject certain Remarketing Agreements is inconsistent with its asserted position of ownership of the property. Moreover, the adversary proceeding simply cannot be considered a response to the narrow questions presented by BancOhio's § 365 motion.

### b. *Conversion Claims*

██ Claims asserting the unlawful conversion of property unquestionably arise under state law and are considered non-core proceedings. *See Meadowlands Comm. v. Banker's Trust Co.,* 79 B.R. 198, 200 (D.N.J. 1987) (conversion action brought by debtor was non-core and not related); *In re Reda Inc.,* 60 B.R. 178, 181 (Bankr.N.D.Ill.1986) (same); *see also Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC National,* 1991 WL 222061 *8 n. 2 (D.D.C. October 9, 1991) (noting in dictum that conversion claims are generally established to be non-core). The complaint's Fifth and Eighth Claims which assert causes of action based on conversion are therefore non-core.

██ The Trustee nonetheless takes the position that because the alleged acts of conversion occurred post-petition the state law claim transforms into a core bankruptcy proceeding. I am not persuaded. The cases cited by the Trustee to support his proposition are based on materially different facts and do not have direct application here. In *Matter of Pester Refining Co.,* 66 B.R. 801, 818 (Bankr.S.D.Iowa 1986), *aff'd,* 85 B.R. 520 (S.D.Iowa 1986), *aff'd in part and rev'd in part,* 845 F.2d 1476 (8th Cir.1988), a creditor converted a sum of money in satisfaction of the debtor's pre-petition debt. In holding that the conversion action was core, the court noted that an essential function of the bankruptcy court was preventing creditors from taking self-help to avoid the bankruptcy process by acts of conversion. Satisfaction of pre-petition debts is exactly the sort of matter federal bankruptcy laws were designed to resolve. Unlike the creditor in *Pester,* BancOhio is not alleged to have converted the property in satisfaction of a pre-petition debt as a means of avoiding the bankruptcy process.

The Trustee also cites *In re Koran Enterprises, Inc.,* 61 B.R. 321, 325–26 (Bankr. W.D.Mo.1986), in which without obtaining bankruptcy court authorization, the debtor's principals used the debtor's cash collateral which was indisputably an asset of the estate. The use of the debtor's cash collateral is explicitly governed by § 363(c)(2) and unquestionably involves the bankruptcy court's core jurisdiction. The court therefore held that the creditor's claim for conversion of the collateral was core. That circumstance is not present in the instant case.

Finally, I cannot accept the reasoning of either *In re National Equipment & Mold Corp.,* 64 B.R. 239 (Bankr.N.D.Ohio 1986), or *In re O'Sullivan's Fuel Oil Co., Inc.,* 88 B.R. 17 (D.Conn.1988), also relied upon by the Trustee. In *National Equipment* the court reasoned that because the "thrust of a conversion action is one to recover [property of the estate,]" it was properly a core proceeding. 64 B.R. at 244. The *O'Sullivan's* court reasoned that because the conversion claim "arose" after the petition was filed the matter was core. 88 B.R. at 20. Precisely the reasoning employed in both of those cases was rejected by the Second Circuit in *Orion Pictures,* 4 F.3d at 1102, and I therefore decline to follow either of them.

### C. *Security Interest Claims*

██ CIS maintains that its Second and Third Claims fall within the bankruptcy court's core jurisdiction under section 157(b)(2)(K) which provides core jurisdiction for, "determinations of the validity, extent, or priority of liens." According to the Trustee, these claims seek merely to determine the validity of liens on the estate's property,

namely the defendant's security interest in the equipment, and to avoid that security interest.

This argument is also without merit. Resolution of these claims is not a simple matter of determining whether the bank's lien on the estate's property is valid or is avoidable. The court must initially decide whether the property in which BancOhio allegedly has a security interest is indeed property of the estate. Section 157(b)(2)(K) has been construed to allow bankruptcy courts to make determinations as to the validity, extent and priority of liens on the *estate's* (or at a minimum, the *debtor's* ) property. *See e.g. In re Dr. C. Huff Co., Inc.,* 44 B.R. 129, 134 (Bankr.W.D.Ky.1984). Cases applying § 157(b)(2)(K) have primarily done so when the property at issue was manifestly property of the estate or of the debtor. *See Gravel and Shea v. Vermont National Bank,* 162 B.R. 961, 968 (D.Vt.1993) (dispute over priority and validity of liens of creditors on escrow fund was core proceeding under § 157(b)(2)(K) because escrow fund was unquestionably property of debtor's estate); *Citibank, N.A. v. Park–Kenilworth Industries, Inc.,* 109 B.R. 321, 325–26 (N.D.Ill.1989) (proceeding was core under § 157(b)(2)(K) because property in question was undisputed estate property). Thus, where the property is not property of the estate, § 157(b)(2)(K) has no application. *See In re Coan,* 95 B.R. 87 (Bankr.N.D.Ill.1988) ("The fact that a debtor claims a lien on another's property does not make the proceeding core ... [core § 157(b)(2)(K) jurisdiction] applies only to liens encumbering other property of estate."); *In re Holland Industries, Inc.,* 103 B.R. 461, 466 (Bankr.S.D.N.Y.1989) (noting that bankruptcy courts have no jurisdiction to determine the validity of liens with respect to property in which the debtor has no legally cognizable interest).

In the instant case, the equipment must first be identified as property in which the estate has a legal interest before the bankruptcy court need reach the issue of the validity of BancOhio's lien. If the property is determined to be property of the estate, I have no doubt that resolution of the issue of whether the property is encumbered by a valid lien would fall under this section. But, where, as here, there remains a significant dispute over whether the identified property is property of the estate, the claim cannot be made core by trying to bootstrap it into this provision.

### d. *Turnover Claims*

■ Despite their labels, the Sixth and Seventh Claims cannot be fairly characterized as "turnover" proceedings under 11 U.S.C. § 542, falling within the bankruptcy court's core jurisdiction under § 157(b)(2)(E): "orders to turn over property of the estate." The Trustee's characterization of the proceeding requires no deference by this Court. Indeed, as with all of the claims, I must look beyond the designated appellation and determine whether in substance they constitute turnover actions. *See In re Matheney,* 138 B.R. 541, 546 (Bankr.S.D.Ohio 1992).

■ An action for turnover of property is core "when its purpose is the collection rather than the creation, recognition or liquidation of a matured debt." *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 172 (Bankr.E.D.N.Y.1986). Numerous courts have therefore held that an action is non-core when property which is the subject of a significant dispute between the parties is sought to be recovered through a turnover action. *See In re Ionosphere Clubs, Inc.,* 1994 WL 132236, *2 (S.D.N.Y. April 14, 1994) (CSH) (action in which there was legitimate dispute over property was not turnover action); *In re J.T. Moran Financial Corp., supra,* 124 B.R. at 938 (same); *In re Ven–Mar Int'l Inc.,* 166 B.R. 191, 192 (S.D.Fla. 1994) (section 542 allows trustees to recover property which is clearly debtor's property—not property which is the subject of a dispute between the parties); *cf. In re Charter Co.,* 913 F.2d 1575, 1579 (11th Cir.1990) ("Congress intended to ease reorganization by allowing the debtor [through § 542] to obtain funds immediately necessary for survival—not all funds, only those not in dispute.") (citations omitted).

The Trustee cites *In re Leco Enterprises, Inc.,* 125 B.R. 385 (S.D.N.Y.1991) as support for his proposition that the estate's right to the equipment and the allegedly accidental payment constitutes a turnover action, even though its claim is disputed by the defendant and depends entirely upon whether the Trustee prevails in its litigation. In *Leco,* an action to collect a disputed account receivable was declared a core proceeding by the court, given that "if collected [the claim] would inure to the benefit of the estate." *Id.* at 389. The court reasoned that since section 542 provides defendants with grounds upon which to defend, both it and section 157(b)(2)(E) should apply equally to disputed and undisputed debt. *Id.* at 391.

The reasoning of *Leco* was strongly criticized, however, in the recent Second Circuit decision of *Orion Pictures, supra.* The *Orion* court was concerned that the *Leco* reasoning created an exception to *Marathon* that would swallow its rule of limited bankruptcy jurisdiction. Since any action that a debtor pursued against a defendant would presumably inure to the benefit of the debtor estate, *Leco* would allow the bankruptcy court to declare all such actions core, even if they constituted traditional state actions against parties who had not filed claims against the debtor estate. *Orion,* 4 F.3d at 1102. This result would effectively contravene the Supreme Court's holding in *Marathon.*

The language of § 542 lends further support to the view that this action is not a turnover proceeding. The terms "matured, payable on demand, or payable on order" create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor.

In the instant case it is clear that there exists a legitimate dispute over ownership of the property. Thus, despite its label, this is not a turnover proceeding as defined in § 542 and will not be considered a core proceeding under § 157(b)(2)(E).

### e. *Use or Lease of Property*

As for the Fourth Claim, the Trustee asserts without elaboration that it is an action falling under § 157(b)(2)(M) which grants core jurisdiction to "orders approving the use or lease of property."

That characterization of the claim is not proper. In claims which fall under this category, the estate's interest is generally uncontested or previously determined. *See In re Franklin Computer Corp.,* 60 B.R. 795, 803 (Bankr.E.D.Pa.1986) (right of debtor to use patents, which was previously accepted in a settlement agreement by bankruptcy court, was property of estate and thus action was core under § 157(b)(2)(M)). In the instant case the identified property is not manifestly the property of the estate, but is the subject of a substantial dispute, crucial in this determination. Accepting the Trustee's position would undermine the *Marathon* decision and its progeny. A debtor may not be allowed to circumvent the rule that a simple breach of contract or other state law claim does not fall within the bankruptcy court's core jurisdiction by terming it a claim seeking an order approving the use or lease of the disputed property. Where, as here, the fundamental underlying issue is whether the equipment is an asset of the debtor's estate, talismanically invoking § 157(b)(2)(M) does not turn the claim into a core matter. *Cf. Wills Motors, Inc. v. Volvo North America,* 131 B.R. 263, 267 (S.D.N.Y.1991) (debtor could not circumvent fact that its claim was essentially action for breach of franchise agreement by naming it a proceeding to seek order to use or lease property under § 157(b)(2)(M)).

In light of the fact that the claims asserted in the adversary proceeding have their genesis outside of the bankruptcy code, the adversary proceeding is non-core.

## B. *Right to a Jury Trial*

 The threshold question of core status thus answered,[1] I must now consider whether the claims presented in the adversary proceeding afford the right to a jury trial. If that question is answered in the affirmative, I must then consider whether withdrawal of the reference at this stage is appropriate or whether judicial efficiency and uniformity will be promoted by allowing the bankruptcy court to manage the proceeding until the case becomes ready for trial.

As an initial matter, I must consider whether BancOhio has waived any right to a trial by jury. The Trustee asserts that BancOhio has voluntarily submitted to the jurisdiction of the bankruptcy court by filing on March 7, 1990 a motion pursuant to 11 U.S.C. § 365(d)(2) seeking an order compelling the Trustee to decide whether to assume or reject certain Remarketing Agreements. This argument has no merit.

In support of his argument the Trustee relies on several cases holding that submission of a *proof of claim* to the bankruptcy court functions as consent to the jurisdiction of that court to issue final orders. Those cases are not directly applicable to this issue. First, BancOhio has not filed a proof of claim. Second, filing a proof of claim is not analogous to the action taken by BancOhio. Filing a proof of claim against the estate's assets is an act which falls directly within the bankruptcy court's core jurisdiction; whereas, seeking to have the court direct the Trustee to make a decision as to whether it will assume a pre-petition contract is not as integral to the restructuring of the debtor-creditor relations. Accordingly, the proof of claim cases do not support the Trustee's assertion that BancOhio has willingly submitted to the bankruptcy court's jurisdiction.[2]

The sole authorities upon which the Trustee purports to rely aside from the nonanalogous proof of claim cases do not support his proposition. The first case, *In re Friedberg*, 106 B.R. 50, 56 (Bankr.S.D.N.Y.1989), *reversed*, 131 B.R. 6, 14 (S.D.N.Y.1991), was reversed on the very grounds for which it is offered as authority. The second case, *In re Mako*, 116 B.R. 280 (Bankr.E.D.Okla.1990), is inapposite. In *Mako*, the court found that the creditor had submitted to the bankruptcy court's jurisdiction without having filed a proof of claim. *Id.* at 282–283. However, the court noted that the creditor was not required to file a proof of claim in order to recover money owed. Moreover, the creditor's claim was undisputed and had already been scheduled by the debtor. The court therefore held that by responding to the debtor's Motion for Authority to Sell, asserting that it had no opposition to the sale of the property provided it did not affect payment of the debt owed, the creditor derived pecuniary benefit from its action and had thereby waived any right to jury trial.

The action the creditor took in *Mako* could be construed as a form of asserting a claim against the estate. In this case by contrast, BancOhio has not attempted to assert a claim against the estate in any fashion. Its motion sought only a prompt decision by the Trustee to either assume or reject the agreements. Even if it were possible to waive the right to a jury trial by taking an action other than filing a proof of claim, BancOhio's motion clearly would not constitute such an action.

The Trustee therefore has no authority for his proposition that BancOhio willingly submitted to the jurisdiction of the bankruptcy court by filing the § 365(d)(2) motion. His assertion of consequent waiver of trial by jury is without merit.

 There having no waiver, I must determine whether the right to a jury trial exists. The basic inquiry is whether the action should be characterized as traditional-

---

1. Although the proceeding is non-core, it is clearly a matter "otherwise related" to the bankruptcy proceeding over which the bankruptcy court may exercise non-core jurisdiction.

2. Indeed, even the mere filing of a proof of claim does not automatically waive the right to a jury trial. *See Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1330 (2d Cir.1993). In order for the filing of a proof of claim to constitute waiver of jury trial, the dispute must be part of the claims allowance process or affect the hierarchical ordering of creditors' claims. *Id.*

ly legal or equitable. *See Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989); *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1328 (2d Cir.1993); *In re McCorhill Pub., Inc.*, 90 B.R. 633, 635 (Bankr.S.D.N.Y.1988). I rely not on the labels attached by the parties but on the substance of the claims and the relief sought. *See Dairy Queen v. Wood*, 369 U.S. 469, 477–78, 82 S.Ct. 894, 899–900, 8 L.Ed.2d 44 ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."); *In re Data Compass Corp.*, 92 B.R. 575, 577 (Bankr.S.D.N.Y.1988); *Matter of Paula Saker & Co., Inc.*, 37 B.R. 802, 808 (Bankr.S.D.N.Y.1984) (in determining whether right to jury trial exists court need not rely on the theory pleaded but must look to facts to determine if plea in equity is needed).

The Trustee contends that Claims One through Six are all related to his request for a declaration that the sales transactions constitute financing agreements, and are therefore equitable in nature. This is a proposition without substance. Although styled in terms of declaratory relief, the basic nature of the suit is one to recover property for the estate. It is therefore in essence an action sounding in law. An analysis of each claim for relief confirms this conclusion.[3]

■ As discussed above, in substance the First, Fourth and Sixth Claims seek recovery of the disputed equipment to the bankruptcy estate. It is basic law that actions for the recovery of property, even where title to the property is disputed, are actions traditionally at law affording the right to a jury trial. *See Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891) ("The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitu-

tional right to call for a jury."); *In re Estate of Schneier, supra*, 426 N.Y.S.2d at 627 (in action to recover property where title was disputed right to jury trial attached); *In re Estate of Shulman*, 43 A.D.2d 929, 353 N.Y.S.2d 181, 182 (1st Dep't 1974) (plaintiff was entitled to jury trial on disputed issue of title to property). BancOhio's jury trial demand is therefore valid as to these claims.

The Seventh Claim seeks the return of the "accidental" payment to BancOhio. This payment was assertedly made pursuant to CIS' obligations under a particular remarketing agreement. "The obligation to return money received under mistake is one imposed by law and generally the form of the action to recover such money is one for money had and received, at least where the transaction is executed and recovery is sought of money paid under a contract. An action for money had and received, although governed by equitable principles is an action at law traditionally triable by a jury...." *Forrest v. Fuchs*, 126 Misc.2d 8, 481 N.Y.S.2d 250, 252 (Sup.Ct.Nassau Co.1984) (citations omitted); *Richardson Greenshields Sec., Inc. v. Mui–Hin Lau*, 693 F.Supp. 1445, 1454 (S.D.N.Y.1988). The claim asserted and the relief sought in such an action is legal in nature, affording the right to a jury trial. *See id.; Granfinanciera*, 492 U.S. at 43, 109 S.Ct. at 2791 (recognizing that actions for "money had and received" are traditionally legal actions requiring trial by jury); *Cohen v. Cohn*, 18 A.D.2d 896, 237 N.Y.S.2d 807, 808 (1st Dep't 1963) (per curiam) (right to jury trial in action for money had and received); *Matter of Paula Saker & Co.*, 37 B.R. at 808 (same). BancOhio's jury demand is valid as to the Seventh Claim.

■ As explained *supra* the Fifth and Eighth Claims seek recovery of property (namely, certain equipment and the "accidental" payment) wrongfully converted. Conversion actions are traditionally legal actions to which the right to a jury trial attaches.

---

**3.** While stopping short of conceding the issue, BancOhio does not attempt to argue that a right to a jury trial attaches to the Third Claim which seeks a declaration that the Trustee may avoid

BancOhio's unperfected security interest. Such a claim involves the bankruptcy court's equitable determination of the creditor's rights against the estate.

*See Rosalinda v. Kent Co., Inc.*, 86 A.D.2d 587, 446 N.Y.S.2d 312, 314 (1st Dep't 1982) (disputed questions of fact with respect to conversion claim were for jury to decide); *In re Reda*, 60 B.R. at 182; *In re Beeline Engineering & Const., Inc.*, 139 B.R. 1025, 1027 (Bankr.S.D.Fla.1992) (defendants were entitled to trial by jury of debtor's conversion claims). BancOhio accordingly properly demanded trial by jury of any disputed issues of material fact relevant to the conversion claims.

Finally, the Second Claim seeks a declaration that BancOhio has no perfected security interest in the equipment. CIS alleges that BancOhio failed to file UCC–1 financing statements apparently necessary to establish BancOhio's perfected security interest in the equipment. BancOhio denies that it failed to file the required UCC–1 financing statements and asserts that, even assuming the transactions were financing transactions, it possesses a perfected security interest in the equipment pursuant to UCC § 9–305, by having notified the lessees of BancOhio's interest in the equipment.

My research has disclosed no case which has considered the issue of whether a litigant is entitled to a trial by jury of the precise facts which defendant maintains give rise to a perfected security interest in the equipment in this case. Nonetheless, I have discovered several cases which have either explicitly recognized the right to a trial by jury of disputed issues of fact concerning the existence of a security interest in property, or which, while not directly considering the issue, noted that a jury trial was held to resolve such facts. *See Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451, 456 (S.Ct.1986) (in action by bank for replevin, jury determined disputed issues of fact directly impacting on whether plaintiff had security interest in property); *Brown v. Arkoma Coal Co.*, 276 Ark. 322, 634 S.W.2d 390

(S.Ct.1982) (reversing trial court decision after bench trial in action for replevin in part because certain questions of fact relevant to the existence of plaintiff's security interest in the property should have been tried by jury); *Citizens National Bank of Denton v. Cockrell*, 850 S.W.2d 462 (S.Ct.Tex.1993) (Supreme Court upheld j.n.o.v. granted by court after jury trial was held in action by seller of equipment against bank for conversion of property; a contested issue of fact determined by jury was whether plaintiff had a perfected security interest in the equipment before the debtor took possession); *cf. Kubota Tractor v. Citizens & So. National Bank*, 198 Ga.App. 830, 403 S.E.2d 218 (1991) (while noting that it was normally for jury to determine factual issues with respect to the existence of a security interest in property, court nonetheless held that because there could be no reasonable dispute as to the existence of the facts, it became a matter of law for the court to determine).

Taking guidance from these decisions, and having discovered no case suggesting a contrary result, I conclude that BancOhio is entitled to a trial by jury of disputed issues of material fact, such as whether it properly filed the required financing statements, or whether it properly notified the lessees, which allegedly establish its perfected security interest in the equipment.

■■ Having concluded that BancOhio's jury demand is sound with respect to seven of the eight claims in the adversary proceeding,[4] I must determine whether the bankruptcy court's inability to conduct a jury trial in non-core matters militates in favor of withdrawing the reference of the adversary proceeding in the instant case.

While it is clear in this circuit that the bankruptcy court may not conduct a jury trial in this non-core proceeding, it does not necessarily follow that the reference must be

---

4. To the extent any of these claims implicates equitable concerns, the presence of those equitable elements does not deprive BancOhio of its right to trial by jury of their legal claims. *See Curtis v. Loether*, 415 U.S. 189, 196 n. 11, 94

S.Ct. 1005, 1009 n. 11, 39 L.Ed.2d 260 (1974); *Wade v. Orange Co. Sheriff's Office*, 844 F.2d 951, 954 (2d Cir.1988); *In re Jensen*, 946 F.2d 369, 373 (5th Cir.1991).

withdrawn at this time. The bankruptcy judge may still adjudicate pre-trial matters not requiring the "final order or judgment" reserved to the district court under § 157(c)(1). *In re Adelphi Institute, Inc.,* 112 B.R. 534, 539 (S.D.N.Y.1990); *see also Orion,* 4 F.3d at 1101–02. Presumably the adversary proceeding has not yet progressed beyond the initial stages of litigation. Judicial efficiency and uniformity will be promoted by allowing the bankruptcy court, already familiar with the underlying action, to manage the proceedings until the case becomes ready for trial, at which time removal to this Court will be required.

### CONCLUSION

The adversary proceeding is a non-core proceeding in which the defendant has the right to a jury trial. Nevertheless, for reasons of efficiency and uniformity, the motion to withdraw the reference is denied, with leave to renew once the case is ready for trial.

It is SO ORDERED.