**In re G–I HOLDINGS, INC., et al. (f/k/a GAF Corp.), Debtors.**

**United States, Plaintiffs,**

v.

**G–I Holdings, Inc., Respondents.**

**Bankruptcy Nos. 01–30135 (RG), 01–38790(RG). Civil No. 02–3082(WGB).**

United States District Court, D. New Jersey.

May 13, 2003.

Christopher J. Christie, United States Attorney, District of New Jersey, by Susan Steele, Asst. United States Attorney, Newark, NJ, Richard G. Jacobus, Trial Attorney, Tax Division, U.S. Department of Justice, Ben Franklin Station, Washington, D.C., for United States.

Weil, Gotshal & Manages LLP, by Deryck Palmer, Esq., Jennifer Fedlsher, Esq., New York City, Riker, Danzig, Scherer, Hyland & Perretti LLP, by Dennis J. O'Grady, Esq., Mark E. Hall, Esq., Morristown, NJ, Skadden, Arps, Slate, Meagher & Flom LLP, by Albert R. Turkus, Esq., Washington, D.C., for Defendants.

## MEMORANDUM OPINION

BASSLER, District Judge.

The United States Internal Revenue Service brought this motion to withdraw the reference to the Bankruptcy Court of G–I Holdings, Inc.'s objection to the Tax claims filed against it. This matter came before the Court on May 5, 2003 for oral argument.

## I. BACKGROUND

On September 21, 2001, the Internal Revenue Service filed a timely Proof of Claim against G–I Holdings, setting forth claims of $400,698,443.88 relating to G–I's unpaid federal income tax liabilities for 1986, 1987, 1988, 1990, 1991, 1992, 1995, 1996, 1998, and 1999. On January 29, 2002, the IRS timely filed another Proof of Claim against ACI, setting forth claims of $530,612,540.13 relating to ACI's unpaid federal income tax liabilities for 1985, 1986, 1987, 1988, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1998, and 1999. The vast majority of the IRS claims pertain to the 1990 transaction, while the remaining claims consist of assorted lesser items originating in an ongoing audit of subsequent tax years.

On May 7, 2002, the Debtors filed their Objection to the IRS claims, raising substantive federal income tax issues. The IRS moved for mandatory withdrawal of the reference pursuant to 28 U.S.C. § 157(d) on June 13, 2002.

**224**

## II. DISCUSSION

The District Court has original, but not exclusive, jurisdiction over all bankruptcy proceedings. *See* 28 U.S.C. § 1334(b). The Bankruptcy Court exercises such jurisdiction under a standing order of reference, as provided by 28 U.S.C. § 157(a). Once a Title 11 proceeding has been referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which provides for mandatory and permissive withdrawal.

■ Withdrawal from the bankruptcy court is mandatory under 28 U.S.C. § 157(d), where the district court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the U.S. Courts have interpreted § 157(d) to mandate withdrawal "only if [the] court can make an affirmative determination that resolution of the claims will require substantial and material consideration of ... non-[bankruptcy] Code statutes." *In re White Motor Corp.*, 42 B.R. 693, 705 (N.D.Ohio 1984). In order to determine if withdrawal is mandatory, the Court must decide if resolution of the tax issue requires substantial and material consideration of non-bankruptcy law.

■ The Bankruptcy Court has power pursuant to 11 U.S.C. § 505 to determine tax issues. It is well established in the Third Circuit that a bankruptcy court has the ability to determine any and all issues of tax liability of debtors, when there has been no prior determination by any state, quasi-judicial or judicial body. *In re A.W.B. Assocs., G.P.*, 144 B.R. 270, 278

(Bankr.E.D.Pa.1992) *citing In re Century Vault Co.*, 416 F.2d 1035 (3d Cir.1969).

The IRS cites *In re CM Holdings, Inc.*, 301 F.3d 96 (3d Cir.2002) to support its contention that the tax issue here is unsettled. The Court does not feel that "unsettled" is the best way to characterize the tax issue in this case. *In re CM Holdings, Inc.* involved interpretation of certain life insurance policy loans, and the district court found two conflicting opinions applicable to the determination. In this case, there are no decisions interpreting the federal statute at issue, let alone two conflicting decisions.

The interpretation of non-bankruptcy law in this case is more accurately characterized as an interpretation of first impression because neither party, nor the Court, could find any case law directly interpreting 26 U.S.C. § 707(a)(2)(B). G–I's attempt to characterize the resolution of the tax claims as simple and straight forward is unpersuasive. The briefs offer three different legal standards that may apply, including one option for which there is no guiding case law.[1] Further, the simple fact that no case has directly discussed § 707(a)(2)(B) in the many years since the passage of 26 U.S.C. § 707 weighs in favor of allowing the district court to resolve the issue.

G–I concedes that there is no case which interprets § 707(a)(2)(B). Rather, it argues that the statute is "plain on its face" and that the bankruptcy court would merely have to apply the facts in this case to the statute. To bolster its argument, G–I cites numerous cases where bankruptcy courts have interpreted state law. This

---

1. G–I Holdings argues that 28 U.S.C. § 721 applies and even if § 707 were applicable, the transaction in this case happened before § 707's effective date so the earlier "disguised sale" case law (see *Otey v. Commissioner*, 70 T.C. 312, 319–20, 1978 WL 3297 (1978), *aff'd* *per curiam*, 634 F.2d 1046 (6th Cir.1980)) is applicable. The IRS argues that the effective date of § 707 preceded the transaction, and so it governs the transaction. These issues need not be resolved at this time.

case, however, involves interpretation of the Federal Internal Revenue Code. The bankruptcy courts operate as an adjunct of the district court and "frequently adjudicate and issue written opinions on matters of state law, including the [UCC], tax, and family law issues." Jones, "Rough Justice in Mass Future Claims: Should Bankruptcy Courts Direct Tort Reform?" 76 Tex. L.Rev. 1695, 1703 (1998). The difference here is that significant interpretation of a federal statute is required and there is a Congressional presumption in favor of Article III courts conducting such interpretation, especially when the non-code issue is dominant. Although the mandatory withdrawal provision is to be construed narrowly, G–I's position would nearly eliminate mandatory withdrawal pursuant to 28 U.S.C. § 157(d).

G–I Holdings cites *In re CIS Corp.,* 172 B.R. 748 (S.D.N.Y.1994) as support for the argument that bankruptcy courts may interpret federal law. In that case, BancOhio moved to withdraw the reference because resolution of the proceeding required interpretation of a Federal Banking Act. The district court judge denied the withdrawal motion because the movant made the "sweeping conclusion that significant interpretation of the statutes and regulations and their underlying policy considerations is compelled," without offering the slightest support for its conclusion. *Id.* at 754. The district court also considered the fact that there was a dearth of case law, but nonetheless determined that the bankruptcy court's interpretation of the Banking Act would be a straight forward or "routine" application of the existing law to the facts.

In this case, there is not one case interpreting the statute. More importantly, in *CIS,* BancOhio was asking for withdrawal because the bankruptcy court would have to examine the interplay between Title 11 and non-bankruptcy laws; BancOhio failed to identify any specific conflict, but merely asserted that there *might* be a conflict. The district court noted that bankruptcy courts are often called on to examine the interplay of Title II and other laws. Resolution of this case does not require an examination of the interplay between Title 11 and other laws, but rather the main bone of contention is a determination and application of the Internal Revenue Code.

*In re Oil Co., Inc.* 140 B.R. 30 (E.D.N.Y. 1992), involved facts similar to those in this case. The IRS filed a motion to withdraw reference in two chapter 11 cases where the IRS had asserted that the debtors were involved in "daisy chain" conspiracy to avoid federal excise taxes on gasoline. *Id.* The district court found that withdrawal was mandatory because it was unable to find any case raising the issues of tax avoidance alleged by the IRS. The court indicated that if the IRS had merely alleged that Oil Co. and Kapco failed either willfully or negligently to pay the excise tax, the issues in the proceeding below may very well only call for mere application of the particular I.R.C. provisions. Because the IRS was alleging a conspiracy and a somewhat more complex situation existed, and the issue was one of first impression, withdrawal was mandatory.

In *Franklin Savings Association v. Office of Thrift Supervision,* 31 F.3d 1020 (10th Cir.1994), a savings association (debtor) brought an action against the OTS seeking removal of the receiver for the savings association. Resolution of the case required an examination of whether the Home Owners' Loan Act allowed for judicial review of the decision of the Director of OTS to replace a conservator appointed for purpose of liquidation with a receiver appointed for liquidation. The district court granted the withdrawal because sig-

nificant interpretation of nonbankruptcy law was required.

In *In re Texaco, Inc.*, 84 B.R. 911 (S.D.N.Y.1988), debtor moved to assume oil and gas leases with state and lessor. State and lessor moved to withdraw reference to the bankruptcy court alleging that resolution of the case required consideration of Title 11 and the Natural Gas Policy Act (NGPA). The withdrawal motion was denied because the issue of whether substantial consideration of the NGPA would be required was too speculative. The threshold issue was whether the leases were assumable. Only after that issue was determined *might* the NGPA issues arise.

Here, the dominant issue is the non-bankruptcy consideration of whether 26 U.S.C. § 707 or § 721 applies to the transaction. The validity of the IRS's claims, and whether G–I Holdings is liable for millions of dollars in taxes, hinges on an examination of §§ 707 and 721 of the Internal Revenue Code.

## III. CONCLUSION

If this case required only a straight forward application of 26 U.S.C. § 707(a)(2)(B), mandatory withdrawal might not be in order. In this case, however, G–I Holdings objected to the IRS Tax claims and disputed whether § 707 applied at all. G–I Holdings raised two alternative legal standards which arguably should be applied instead. The complexity of this case requires more than a simple application of the Internal Revenue Code. Because substantial and material consideration of the competing non-bankruptcy legal standards must be undertaken, withdrawal is mandatory pursuant to 11 U.S.C. § 157(d).

There is no case law directly interpreting 26 U.S.C. § 707(a)(2)(B), so the determination of whether that code section applies to the facts in this case would be one of first impression. Such determinations have been reserved for Article III Courts.

The significant fiscal impact of this proceeding also strikes the Court. The tax claims against G–I Holdings and ACI amount to roughly $930,000.000.00. In a recent related proceeding, an attorney for G–I Holdings alluded to the relative significance of the IRS claims to those of other creditors. (*See* Hearing Trans. 4/14/03, *Off. Comm. of Asbestos Claimants v. G–I Holdings*, 75:2–7).

The Court grants the United States' motion to withdraw the reference to the bankruptcy court of the IRS tax claims.